IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-02472-PAB-SKC

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

      Plaintiff,

and

LA'TONYA FORD,
KIMBERLY FUNCHESS,
MARCUS ADAMS,
KENNETH CONLEY,
ALCENA GANNAWAY,
THE ESTATE OF KONTAR TONEE MWAMBA, and
MARIETTA VARGAS,

      Intervenor Plaintiffs,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,
JACKSON NATIONAL LIFE DISTRIBUTORS, LLC, and
JACKSON NATIONAL LIFE INSURANCE COMPANY OF NEW YORK,

      Defendants.

_____

## ORDER

_____

      This matter comes before the Court on Defendants' Consolidated Partial Motion

to Dismiss Plaintiffs' Second Amended Complaint and First Amended Complaint in

Intervention [Docket No. 53]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  BACKGROUND

The Equal Employment Opportunity Commission ("EEOC") filed this lawsuit on September 30, 2016.  Docket No. 1.  The Second Amended Complaint, filed on January 27, 2017, asserts claims on behalf of nine former employees of defendants "and other aggrieved individuals" who were allegedly subjected to discrimination, retaliation, and harassment on the basis of race, sex, color, and/or national origin. Docket No. 31 at 1-2.  On December 1, 2016, seven of the employees represented in the EEOC action – La'Tonya Ford, Kimberly Funchess, Marcus Adams, Kenneth Conley, Alcena Gannaway, The Estate of Kontar Tonee Mwamba, and Marietta Vargas – moved to intervene in the lawsuit.  Docket No. 9.  The motion to intervene was granted on January 9, 2017, Docket No. 20, and on February 23, 2017, intervenor plaintiffs filed their First Amended Complaint in Intervention [Docket No. 51].  On March 2, 2017, defendants filed their consolidated partial motion to dismiss.  Docket No. 53. Defendants seek dismissal of allegations asserted in both the First Amended Complaint in Intervention and the EEOC's Second Amended Complaint.  On March 23, 2017, the EEOC and the intervenor plaintiffs filed a consolidated response in opposition to defendants' motion, Docket No. 58, to which defendants replied on April 7, 2017. Docket No. 62.  The facts stated below are taken from the First Amended Complaint in Intervention and the Second Amended Complaint and are presumed to be true for purposes of this motion to dismiss.

### A.  Second Amended Complaint

The Second Amended Complaint asserts claims for race discrimination, sex

discrimination, national origin discrimination, retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 *et seq.*, on behalf of Marcus Adams, Kenneth Conley, La'Tonya Ford, Kimberly Funchess, Alcena Gannaway, the Estate of Kontar Mwamba, Marietta Vargas, George Thomas Minas Hill, Robert Blanchette, and other aggrieved individuals.  Docket No. 31 at 1, 29-32.  At all times relevant to this lawsuit, defendants Jackson National Life Insurance Company ("JNL"), Jackson National Life Distributors, LLC ("JNLD"), and Jackson National Life Insurance Company of New York ("JNL - New York") operated as a joint employer and/or integrated enterprise offering and distributing financial products.  *Id.* at 3, ¶ 7. As discussed in more detail below, all of the aggrieved individuals worked in various sales representative positions in defendants' Denver office between 2007 and 2012. Those positions included Internal Wholesaler, Business Development Consultant ("BDC"), and External Wholesaler, with External Wholesaler being the highest paid position.  *Id.* at 4-5, ¶ 17.

### 1.  La'Tonya Ford

La'Tonya Ford, a black female, was hired in February 2006 as an Internal Wholesaler in defendants' Atlanta, Georgia office.  *Id.* at 5, ¶ 25.  In 2007, Ms. Ford was transferred to the headquarters of JNLD in Denver, where she began reporting to Corey Walker, the Desk Director of the Regional Broker Dealer Channel ("RBD Channel").  *Id.* at 6-7, ¶¶ 26, 28, 43, 45.[1]  Following Ms. Ford's transfer to headquarters,

---

[1]"Channel" is not defined in either the Second Amended Complaint or the First Amended Complaint in Intervention.  The term appears to refer to a particular division or department of JNLD.

she overheard or was directly targeted with a number of racist and/or sexist comments, including comments relating to the size of her breasts and the breasts of other female employees and racial slurs in reference to President Obama. *Id.* at 6-7, ¶¶ 32-35, 36-37. Despite Ms. Ford's success as an Internal Wholesaler and her ultimate promotion to BDC in or around March 2009, she was not given quarterly evaluations by Mr. Walker and was placed on a written performance plan on or about September 10, 2009. *Id.* at 7, ¶¶ 40-45. After the filing of a formal charge of discrimination with the EEOC on or about December 7, 2009 and an internal investigation into Ms. Ford's complaints of discriminatory treatment, Ms. Ford's performance plan was expunged and she was reassigned to the supervision of Robert Blanchette, Jackson's Vice President of National Sales Development. *Id.* at 8, ¶¶ 49, 51-52. Both Mr. Walker and James Bossert, Jackson's Senior Vice President of Sales Development and Mr. Blanchette's supervisor, pressured Mr. Blanchette to discipline Ms. Ford. *Id.* at 8-9, ¶¶ 56, 59, 62. Mr. Blanchette refused, finding no evidence that Ms. Ford's job performance was unsatisfactory, and ultimately recommended Ms. Ford for an External Wholesaler position in December 2009. *Id.* at 8-9, ¶¶ 59, 63-64. Mr. Bossert stated that she would not get the position, and Ms. Ford was never interviewed. *Id.*, ¶¶ 65-66. Ms. Ford subsequently applied for at least eight External Wholesaler positions in 2010. *Id.* at 10, ¶¶ 79-82. Six of those positions were filled with less qualified White males. *Id.* at 10-11, ¶¶ 80, 83. After being subjected to additional incidents of racial and sexual harassment, Ms. Ford was constructively discharged in October 2010. *Id.*, ¶ 92.

### 2. Kimberly Funchess

Kimberly Funchess, a black female, was hired by defendants in October 2005 as an Internal Wholesaler in the Atlanta, Georgia office. *Id.* at 11, ¶ 93. In 2006, Ms. Funchess was transferred to Denver, where she was promoted to a Desk Director position. *Id.* at 12, ¶¶ 94-95. In 2008, Ms. Funchess began reporting to Mr. Bossert, who referred to Ms. Funchess and Ms. Ford as "lazy," "prima donnas," "bitches from Atlanta," and "our two resident street walkers." *Id.*, ¶¶ 97-98. Mr. Bossert excluded Ms. Funchess from lunches and meetings with other, white desk directors in his office. *Id.*, ¶ 100. When Ms. Funchess complained to CEO Clifford Jack about race discrimination in the company, Mr. Bossert warned Ms. Funchess to be careful. *Id.*, ¶ 102. In November 2009, Mr. Bossert subjected Ms. Funchess to unwarranted discipline. *Id.*, ¶ 103. The following month, she filed a charge of discrimination. *Id.*, ¶ 104. After being subjected to unwarranted discipline a second time in April 2010, Ms. Funchess was fired on April 14, 2010. *Id.* at 13, ¶¶ 105-06.

### 3. Marietta Vargas

Marietta Vargas, an African-American female of Cabo Verdean national origin, was hired by defendants as an Internal Wholesaler in May 2008. *Id.* at 13, ¶ 109. Ms. Vargas was supervised by Mr. Walker. *Id.*, ¶ 110. Despite her success as an Internal Wholesaler and her completion of additional training requirements, Ms. Vargas was not promoted to a higher Internal Wholesaler position and was told that she was not qualified to apply for a BDC position, which was ultimately filled by a white male with less experience. *Id.* at 13-14, ¶¶111-116. In November 2009, two months after she

complained to Human Resources about discriminatory treatment, Ms. Vargas was involuntarily transferred to the Bank Channel. *Id.* at 14, ¶¶ 117-118. In December 2009, Ms. Vargas filed a charge of discrimination alleging retaliation and discrimination on the basis of race, sex, and national origin. *Id.*, ¶ 119. Beginning in April 2010, Ms. Vargas reported to Elizabeth Griffith, a white female, who was in turn supervised by Mr. Bossert. *Id.*, ¶¶ 120-22. Ms. Griffith, Mr. Bossert, and other supervisors actively ignored Ms. Vargas and did not respond reliably to her emails. *Id.*, ¶¶ 123-24. Ms. Vargas was constructively discharged in May 2010. *Id.*, ¶ 125.

### 4. *Kontar "Tonee" Mwamba*

Kontar "Tonee" Mwamba, a black male, was hired by defendants as a BDC in October 2008. *Id.*, ¶ 126. In January 2009, Mr. Mwamba overheard an External Wholesaler make racist comments regarding another black employee. *Id.* at 15, ¶ 128. When he complained, Mr. Mwamba was told that the company allowed the External Wholesaler to do what he wanted. *Id.*, ¶ 129. Mr. Mwamba also complained to management that white employees were throwing foam stress balls at him during work. *Id.*, ¶ 130. After management ordered that the ball-throwing stop, Mr. Bossert sent an email to all employees overturning that directive and referring to Mr. Mwamba as an "outsider who does not understand the nature of the job." *Id.*, ¶¶ 130, 132-33. Sometime after September 2009, Mr. Mwamba – who had a number of contacts at Merrill Lynch based on his prior employment with the company – applied for a position designed to deal exclusively with Merrill Lynch. *Id.* at 16, ¶¶ 139-141. Although Mr. Mwamba was originally scheduled for an interview, his interview was cancelled by Desk

Director Jake Milder.  *Id.*, ¶ 142.  A white male employee who was less qualified than Mr. Mwamba was selected for the position.  *Id.*, ¶ 144.  In September 2009, after complaining to Human Resources about not being interviewed and about being treated less favorably than white employees, Mr. Mwamba was placed on a performance improvement plan.  *Id.* at 17, ¶¶ 145-46.  Mr. Mwamba was removed from the plan on December 7, 2009, the same day Ms. Ford filed a charge of discrimination with the EEOC.  *Id.*, ¶ 149.  Mr. Mwamba received a negative performance evaluation in January 2010.  *Id.*, ¶ 153.  On January 26, 2010, he filed a charge of discrimination with the EEOC.  *Id.*, ¶ 154.  After being subjected to continued discriminatory treatment, Mr. Mwamba was constructively discharged in April 2012.  *Id.* at 18, ¶¶ 155-56.

### 5. Kenneth Conley

Kenneth Conley, a black male, was hired by defendants as a BDC in March 2008.  *Id.* at 18, ¶ 157.  After President Obama's election, Mr. Conley's coworkers told Mr. Conley to be careful not to celebrate.  *Id.*, ¶ 160.  Mr. Conley began reporting to Desk Directors Jake Milder and James Horvath in July 2009.  *Id.*, ¶ 161.  Despite Mr. Conley's success as a BDC, Mr. Milder and Mr. Horvath gave Mr. Conley low scores on his performance evaluations.  *Id.* at 18-19, ¶¶ 163-170.  In March 2010, Mr. Conley filed a charge of discrimination alleging race and national origin discrimination.  *Id.* at 19, ¶ 172.  In September and October 2010, Mr. Conley was given two unwarranted disciplinary actions.  *Id.* at 20, ¶¶ 181-82.  Mr. Conley was discharged on October 25, 2010.  *Id.*, ¶ 184.

### 6. Marcus Adams

Marcus Adams, a black male, was hired by defendants as an Internal Wholesaler in February 2007. *Id.* at 21, ¶ 185. During his first year of employment, Desk Directors Greg Sodja and Corey Walker only spoke with Mr. Adams when necessary. *Id.*, ¶ 188. Mr. Bossert also did not speak to Mr. Adams even though he spoke often with white employees. *Id.*, ¶ 189. In June 2008, Mr. Adams inquired about the possibility of working as an External Wholesaler. *Id.*, ¶ 191. Divisional Vice President John Poulson told Mr. Adams that he would not succeed as an External Wholesaler due to his weight. *Id.*, ¶ 192. Although Mr. Adams subsequently lost 60 pounds, he was not selected for an External Wholesaler position and an employee who weighed significantly more was promoted to the position. *Id.*, ¶¶ 193-94. In 2008 and 2009, Mr. Adams pursued two professional training opportunities – "The Academy" and "Boot Camp." *Id.* at 22, ¶¶ 196-203. Mr. Adams failed the boot camp test in October 2009 and was initially denied permission to retake it. *Id.* at 23, ¶¶ 205-06. In June 2010, Mr. Poulson finally agreed that Mr. Adams could retake the test on the condition that Mr. Adams kept his mouth shut. *Id.*, ¶ 207. Mr. Adams interpreted this statement to mean that Mr. Adams was not allowed to join or support other black employees who had filed charges of discrimination. *Id.*, ¶ 208. After Mr. Adams retook the test, Mr. Sodja applied such a stringent standard to Mr. Adams' answers that Mr. Adams ended up failing the test a second time. *Id.*, ¶¶ 211-12. On July 30, 2010. Mr. Adams filed a charge of discrimination with the EEOC. *Id.*, ¶ 213. Mr. Sodja and Mr. Bossert stopped interacting with Mr. Adams and, on September 2, 2010, Mr. Adams was terminated.

*Id.* at 23-24, ¶¶ 214-16.

### 7. Alcena Gannaway

Alcena Gannaway, a black male, was hired by defendants as an Internal Wholesaler in January 2005. *Id.*, ¶ 217. In 2008 and 2009, despite his strong performance as an Internal Wholesaler, Mr. Gannaway was denied five separate Desk Director positions, all of which were ultimately given to white employees. *Id.*, ¶¶ 220-23. Mr. Gannaway was discharged in November 2009 for allegedly sending an unapproved email that had been approved for distribution in earlier emails. *Id.* at 25, ¶¶ 224-25.

### 8. George Thomas Minas Hill

George Thomas Minas Hill, a black male of Ethiopian descent, was hired by defendants as an intern in 2009. *Id.*, ¶ 226. In January 2010, he was hired as a Level I Internal Wholesaler selling fixed-income annuities, after being passed over for a more lucrative position selling variable annuities, which was given to a less experienced white female intern. *Id.* at 25-26, ¶¶ 228-33. During his employment, Mr. Hill was referred to as "Minus," "C Minus," and "Montel Williams." *Id.* at 26, ¶¶ 234, 236. In addition, other employees would make "clicking" noises around Mr. Hill in reference to his African descent. *Id.*, ¶ 235.

Mr. Hill completed all the training requirements to be promoted to a Level II Internal Wholesaler position; however, he was not promoted. *Id.*, ¶¶ 239, 242. Desk Directors Elizabeth Griffith and Peter Meyers would not give Mr. Hill any guidance other than to say that they needed "more." *Id.* at 26-27, ¶¶ 243-44. In November 2011, Mr.

Hill assisted another employee who was studying to retake a training exam.  *Id.* at 27, ¶ 246.  Mr. Hill was subsequently discharged for his coaching efforts, even though other employees were not discharged for similar efforts.  *Id.*, ¶ 247.

### 9.  *Robert Blanchette*

Robert Blanchette, a white male, was hired by defendants in July 2009 to be the Vice President of JNLD's sales desk.  *Id.*, ¶ 249.  In that role, Mr. Blanchette directly supervised 13 Desk Directors and indirectly supervised 250 Internal Wholesalers and BDCs.  *Id.*, ¶¶ 251-52.  Mr. Blanchette reported to Mr. Bossert and Executive Vice President Greg Salsbury.  *Id.* at 28, ¶ 253.  Mr. Bossert instructed Mr. Blanchette to look for reasons to fire Ms. Funchess and Ms. Ford.  *Id.*, ¶ 257.  In January 2010, two other Vice Presidents suggested to Mr. Blanchette that he would be fired if he did not fire Ms. Funchess and Ms. Ford.  *Id.* at 28-29, ¶¶ 262-67.  Mr. Blanchette informed the Vice Presidents that both employees were performing well.  *Id.* at 29, ¶ 268.  On February 18, 2010, a day after Mr. Blanchette gave Ms. Ford a "Meets Expectations" on her performance evaluation, Mr. Bossert fired Mr. Blanchette.  *Id.*, ¶¶ 269-70.

### 10.  *Pre-Litigation Conciliation Efforts*

As indicated above, La'Tonya Ford, Kimberly Funchess, Marietta Vargas, Kontar "Tonee" Mwamba, Kenneth Conley, Marcus Adams, and Alcena Gannaway all filed charges of discrimination with the EEOC more than thirty days prior to the EEOC's initiation of this lawsuit.  *Id.* at 4, ¶ 10.  After providing defendants with notice of the charges, the EEOC issued Letters of Determination finding reasonable cause that defendants had violated Title VII.  *Id.*, ¶¶ 11-12.  Despite efforts at conciliation, the

EEOC was unable to resolve the charges against defendants and, on September 30, 2015, the EEOC issued defendants Notices of Failure of Conciliation. *Id.*, ¶¶ 14-15. The complaint alleges that all conditions precedent to the filing of this lawsuit have been satisfied. *Id.*, ¶ 16.

### B. First Amended Complaint in Intervention

The First Amended Complaint in Intervention asserts claims for hostile work environment, race and/or color discrimination, sex discrimination, and retaliation on behalf of intervenor plaintiffs La'Tonya Ford, Kimberly Funchess, Marcus Adams, Kenneth Conley, Alcena Gannaway, The Estate of Kontar Tonee Mwamba, and Marietta Vargas. Docket No. 51 at 18-22.[2] The allegations asserted in the First Amended Complaint in Intervention are substantially similar to those included in the Second Amended Complaint and will not be repeated here. To the extent the First Amended Complaint in Intervention differs or asserts additional facts, those differences are not material to the Court's resolution of defendants' motion to dismiss.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the

---

[2]Of the individuals represented in the EEOC's action, only George Thomas Minas Hill and Robert Blanchette did not intervene as plaintiffs.

pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). To the extent the defendant attacks the factual basis for

subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata County*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances." *Id.* Ultimately, and in either case, plaintiffs have "[t]he burden of establishing subject matter jurisdiction" because they are "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

## III. ANALYSIS

### A. Claims Based on Acts of Discrimination Occurring Before February 10, 2009

Defendants argue that the Title VII claims in this case are limited to acts of discrimination occurring on or after February 10, 2009, which was 300 days before the first former employee of defendants filed a charge of discrimination with the EEOC. Docket No. 53 at 2; Docket No. 62 at 1. "An employee wishing to challenge an employment practice under Title VII must first file a 'charge' of discrimination with the EEOC." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007). Such a charge must be filed within "three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).[3] If the alleged unlawful incident occurs

---

[3]The 300-day period only applies in states that have "an entity with the authority to grant or seek relief with respect to the alleged unlawful practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *see also* § 2000e-5(e)(1). Otherwise, the charge of discrimination must be filed within 180 days. § 2000e-5(e)(1). There appears to be no dispute in this case that the 300-day period applies. Docket No. 53 at 8; Docket No. 58 at 11.

outside the 300-day window, a plaintiff will "lose the ability to recover for it." *Morgan*,

536 U.S. at 110. Thus, with respect to claims based on discrete acts of discrimination,

incidents occurring outside the 300-day period may not be considered for purposes of

determining liability. *Id.* at 114.

Although *Morgan* abrogated the use of the continuing violation doctrine for

claims of discrete acts[4] of discrimination and retaliation, *see id.* at 114-15, different

rules apply to hostile work environment claims. As the Supreme Court recognized in

*Morgan,* "[h]ostile environment claims are different in kind from discrete acts." *Id.* at

115. "Such claims are based on the cumulative effect of individual acts" and "therefore

cannot be said to occur on any particular day." *Id.* Accordingly, "the entire time period

of the hostile environment may be considered by a court for the purposes of

determining liability," provided that at least one act "contributing to the [hostile work

environment claim] occur[red] within the filing period. *Id.* at 117.

Defendants contend that the complaints assert claims for discrete acts of

discrimination that are time-barred under § 2000e-5(e)(1). Docket No. 53 at 8. In

response, plaintiffs argue that the challenged allegations relate to "component acts" of a

hostile work environment and are thus properly considered in determining defendants'

liability. Docket No. 58 at 6. Plaintiffs further assert that such acts can be considered

as "background evidence" of discriminatory intent. *Id.* at 11.

---

[4]Relying on *Morgan*, the Court interprets "discrete acts" to mean instances of discrimination or retaliation that are independently actionable. *See Morgan*, 536 U.S. at 111 (identifying as "discrete acts" actions that qualify as "unlawful employment practice[s]" under Title VII). Defendants appear to have adopted a similar definition. *See* Docket No. 62 at 3 (arguing that, "[w]hen an alleged act is actionable on its own, the continuing violation doctrine does not apply").

*Morgan* does not directly address whether discrete acts of discrimination falling outside the 300-day window may be considered in conjunction with a hostile work environment claim. *See Royal v. Potter*, 416 F. Supp. 2d 442, 448 (S.D. W. Va. 2006) ("The *Morgan* decision does not expressly address . . . whether discrete acts of discrimination falling outside the relevant time period may be considered in holding the defendant vicariously liable for hostile work environment."); *see also Williams v. Paulson*, 2007 WL 9652983, at *14 (N.D. Ga. Dec. 24, 2007) (noting split in authority "as to whether discrete acts can form a basis for a hostile work environment claim"). While this Court has not found any decisions by the Tenth Circuit expressly confronting the issue, other jurisdictions have taken competing approaches. Some courts have relied on *Morgan* to hold that discrete acts of discrimination can never be considered as part of a hostile work environment claim because they are qualitatively different from the type of conduct that would create a hostile work environment. *See, e.g.*, *O'Connor v. City of* Newark, 440 F.3d 125, 127 (3d Cir. 2006) (finding that "discrete acts" of discrimination could not be aggregated under a continuing violations theory); *Porter v. Cal. Dep't of Corrs.*, 419 F.3d 885, 892 (9th Cir. 2005) (stating that, although "it would be tempting to conclude that all the offensive activities that Porter allegedly encountered between 1995 and 2001 are both timely and actionable as different parts of the same unlawful employment practice[,] . . . . such an approach would blur to the point of oblivion the dichotomy between discrete acts and a hostile environment" (internal quotation marks, citations, and brackets omitted)); *Williams*, 2007 WL 9652983, at *15 (holding, consistent with Eleventh Circuit precedent, that discrete acts

could not form the basis of a hostile work environment claim); *Krause v. Lexisnexis*, 2007 WL 201023, at *4-5 (E.D. Mich. Jan. 23, 2007) (rejecting argument that discrete acts of discrimination occurring outside of 300-day period could be considered as part of hostile work environment claim on ground that "non-discrete acts which make up hostile environment claims are different in kind from discrete acts" (internal quotation marks omitted)); *Stremple v. Nicholson*, 2006 WL 1744316, at *4 (W.D. Pa. June 22, 2006) (finding that "[t]here is a qualitative different between the types of evidence that support a hostile work environment claim and a traditional discrimination case").[5]  Other courts have rejected the position that *Morgan* stands for such a categorical rule.  *See, e.g.*, *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011) (holding that discrete acts of discrimination may comprise a hostile work environment claim as long as they

---

[5]Some courts have distinguished the question of whether time-barred discrete acts may be used to support a hostile work environment claim from the question of whether discrete acts may generally be relied upon to support a hostile work environment claim.  *See, e.g.*, *Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 222-23 (4th Cir. 2016) (distinguishing *Morgan* on ground that plaintiff was not "rely[ing] on the continuing-violation doctrine to revive time-barred discrete acts" and stating that sole issue in case was "whether non-time-barred discrete acts [could be] considered part of the 'series of separate acts that collectively' create a hostile work environment thus rendering a hostile-environment claim timely under the continuing-violation doctrine"); *Vargas v. Johnson*, 2015 WL 13667419, at *21 n.8 (D.N.M. Oct. 14, 2015) (finding *Morgan* irrelevant because *Vargas* did "not involve a consideration of which Plaintiff's claims occurred outside a particular finding period").  But such a distinction is inconsistent with the reasoning in *Morgan*.  As the court explained in *Williams*, "[i]f discrete acts could constitute hostile work environment claims, then an untimely discrete act would certainly serve as a basis for liability if it were brought with a related, timely discrete act because hostile work environment claims permit untimely acts to create liability if they are related to timely events."  2007 WL 9652983, at *15; *see also Morgan*, 536 U.S. at 117 ("It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

"collectively meet the independent requirements of that claim . . . and [are] adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts" and finding "no authority for the idea that particular acts cannot as a matter of law simultaneously support different types of Title VII claims" (internal quotation marks omitted)); *Royal*, 416 F. Supp. 2d at 449-51 (holding that discrete acts of discrimination falling outside the charge filing period may be considered, "not just as background evidence . . . , but as conduct for which an employer is liable" under a hostile work environment theory); *Huntsberger v. City of Yerington*, 2015 WL 112802, at *5 (D. Nev. Jan. 8, 2015) ("The Court is perplexed how Defendants have purported to extract a rule from [*Morgan*] that any acts that would be time barred under Title VII if brought as discrete acts of discrimination cannot be included as part of [a hostile workplace environment] claim. The case quite clearly stands for the opposite proposition."); *see also Vargas*, 2015 WL 13667419, at *21 & n.8 (citing cases appearing to allow claims for hostile work environment "based on the same discrete acts that form the basis for a discrimination claim," but not addressing whether time-barred discrete acts could be considered in conjunction with a hostile work environment claim); *Heshley v. City of Albuquerque*, 2015 WL 13665457, at *9 (D.N.M. Mar. 27, 2015) (agreeing with the D.C. Circuit that discrete or "stand-alone" violations of Title VII may be used to support a hostile work environment claim so long as the acts collectively meet the hostile work environment standard); *Yonemoto v. Shinseki*, 3 F. Supp. 3d 827, 845 n.10 (D. Haw. 2014) (noting that, although the court was bound by the Ninth Circuit's decision in *Porter* "to the extent it addresses the scope of

discrimination and hostile work environment claims that are based on untimely events," the Ninth Circuit had, in other contexts, "considered discrete acts as part of a hostile work environment claim").  In *Baird*, the D.C. Circuit held that, "although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own."  662 F.3d at 1252.  The court approved of prior case law cited by the district court only to the extent that those cases stood for the proposition that "acts giving rise to a hostile work environment claim must collectively meet the independent requirements of that claim . . . and . . . be adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts."  *Id.* (internal citations omitted).

The Court is persuaded by the D.C. Circuit's approach.  *Morgan*'s discussion of the differences between "discrete acts" and hostile work environment claims concerned, not the conduct underlying those claims, but the nature of the claims themselves. Accordingly, nothing in *Morgan* establishes that stand-alone acts of discrimination – even those acts falling outside the 300-day filing period – may not be considered as part of a hostile work environment claim.  *See Royal v. Potter*, 416 F. Supp. 2d 442, 451 (S.D. W. Va. 2006) ("The *Morgan* opinion does not command district courts to literally divide the alleged discriminatory acts into two separate lists, one for discrete and one for non-discrete . . . .  Instead, the *Morgan* opinion reinforces the two types of claims brought under Title VII as different unlawful practices and discusses how the

statutory filing language applies to both."). *Morgan*'s silence on this issue is particularly notable given that the Court of Appeals expressly considered discrete acts of discrimination falling outside the limitations period in conjunction with the plaintiff's hostile work environment claim. *See Morgan v. National R.R. Passenger Corp.*, 232 F.3d 1008, 1017 (9th Cir. 2000) (stating that "[e]vidence of the Yard's pre-limitations period hostile environment include[d] the decision to hire Morgan at a lower grade than others, Morgan's multiple disciplines and denial of training, the use of racially derogatory language, and the overall racially-laden environment"), *rev'd in part*, 536 U.S. 101 (2002); *see also id.* at 1016 & n. 16 (analyzing the plaintiff's "claims of discrimination, hostile environment, and retaliation discretely," but noting that "the evidence of each alleged violation significantly overlaps, and segregating them is both a difficult and artificial task").

The Court also finds that a rule categorically barring the use of discrete acts to support a hostile work environment claim is not necessary to "prevent employees from 'piggy-backing' unexhausted claims of discrete discriminatory acts onto properly exhausted ones." *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 229 n.15 (D.D.C. 2005). As the D.C. Circuit recognized in *Baird*, such concerns are already addressed by the requirements that the component acts of discrimination and harassment (1) be "adequately linked into a coherent hostile environment claim" and (2) "collectively meet the independent requirements of that claim." *Baird*, 662 F.3d at 1251-52 (internal quotation marks omitted).

In summary, the Court declines to adopt the rule urged by defendants, which

would categorically bar consideration of discrete acts of discrimination falling outside the limitations period in conjunction with plaintiffs' hostile work environment claims. Ordinarily, the next step would be to "determine whether the acts about which [plaintiffs] complain[ ] are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 923 (10th Cir. 2016) (quoting *Morgan*, 536 U.S. at 120). The Tenth Circuit has "recognized several non-exclusive factors to guide the analysis," including whether the acts were "related by type, frequency, and perpetrator" and "whether the acts occurred when the employee was working in the same place." *Id.* (internal quotation marks omitted). However, defendants do not apply these factors or make any argument that the challenged allegations are unrelated to the other component acts of plaintiffs' hostile work environment claims. Because defendants have not asserted any basis – other than the categorical rule rejected above – for dismissing plaintiffs' allegations related to acts falling outside the 300-day window, their motion to dismiss will be denied as to this issue.[6]

### B. Claims Lacking a Temporal Context

Defendants also move to dismiss a number of allegations for which plaintiffs

_____

[6]As plaintiffs argue, conduct falling outside the 300-day window may also be considered as "background evidence" of discriminatory intent for purposes of plaintiffs' discrimination and retaliation claims. *See Sunderman v. Westar Energy Inc.*, 307 F. App'x 224, 229 (10th Cir. 2009) (unpublished) (holding that district court "should have considered the prior retaliation alleged by plaintiff as background evidence when considering plaintiff's claim that he was terminated in retaliation for filing his complaint with the [Kansas Human Rights Commission]"); *Pitre v. W. Elec. Co., Inc.*, 843 F.2d 1262, 1267 (10th Cir. 1988) ("Particularly when a company's decision-making process has not changed, evidence of prior discrimination might in some circumstances support the inference that such discrimination continued." (internal quotation marks omitted)).

have failed to provide a specific date or temporal context. *See* Docket No. 53 at 9.

According to defendants, plaintiffs "must allege that discrete acts of discrimination occurred within 300 days of the filing of a charge or else the alleged acts are subject to dismissal." *Id.*

Defendants' argument is predicated on an assumption that the Court may not consider any discriminatory act falling outside of the 300-day window for purposes of determining liability. As discussed above, however, such acts may be considered in conjunction with plaintiffs' hostile work environment claims under a continuing violation theory. *See Morgan*, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

The cases defendants cite do not support a contrary conclusion. In *Mitchell v. Geo Group, Inc.*, No. 05-cv-197-PSF-CBS, 2005 WL 1489658 (D. Colo. June 23, 2005), the court suggested that the plaintiff's negative evaluations and suspension could not serve as a basis for a charge of retaliation where the plaintiff had failed to provide a date for when those actions occurred. *Id.* at *6. However, the plaintiff in that case had not asserted a claim for hostile work environment. *See id.* at *1-2 (discussing claims asserted in complaint). Similarly, although the plaintiff's failure to plead specific dates was fatal to her claims of gender discrimination in *DD v. Lincoln Hall*, 2010 WL 695027 (S.D.N.Y. Feb. 19, 2010), it is not clear whether the court's holding applied to a hostile work environment claim. *See id.* at *5. Even if it did, *Lincoln Hall* is distinguishable from this case. There, the plaintiff failed to allege any acts of discrimination occurring

within the 300-day window, which contravenes the rule that a plaintiff asserting a hostile work environment claim must still assert at least one discriminatory act falling within the statutory time period. *Id.*; *see also Morgan*, 536 U.S. at 117. Here, in contrast, defendants do not argue that plaintiffs have failed to allege any acts of discrimination occurring within the 300-day window.

Because plaintiffs in this case have asserted claims for hostile work environment, even acts falling outside the statutory time period may be considered for purposes of determining liability so long as they are sufficiently related to the acts falling within the 300-day window. *See Morgan*, 536 U.S. at 118. Defendants have not demonstrated that the challenged allegations are unrelated to plaintiffs' hostile work environment claims. Accordingly, the mere fact that the allegations lack specific dates or temporal context does not entitle defendants to dismissal.

### C. Claims Asserted on Behalf of Robert Blanchette and George Thomas Minas Hill

Defendants move to dismiss any claims asserted by the EEOC on behalf of Mr. Blanchette or Mr. Hill on the ground that neither Mr. Blanchette nor Mr. Hill exhausted his administrative remedies by filing a charge of discrimination. Docket No. 53 at 11.

Before filing suit under Title VII, a plaintiff must exhaust his administrative remedies with the EEOC. *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). The exhaustion of administrative remedies is a jurisdictional prerequisite in the Tenth Circuit and, therefore, appropriate for resolution under Rule 12(b)(1). *Id.* ("Unlike many other circuits, we have held that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII -

not merely a condition precedent to suit.").[7]  The Court is permitted to exercise

jurisdiction over claims falling within "the scope of the administrative investigation that

can reasonably be expected to follow the charge of discrimination submitted to the

EEOC."  *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (quotation marks

and citation omitted).  "[B]ecause failure to exhaust administrative remedies is a bar to

subject matter jurisdiction, the burden is on the plaintiff as the party seeking federal

jurisdiction to show, by competent evidence, that she did exhaust."  *McBride v. CITGO*

*Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002).

Plaintiffs argue that Mr. Blanchette and Mr. Hill were not required to exhaust their

administrative remedies because the EEOC "may bring an enforcement action for

victims of discrimination discovered during the course of a charge investigation, without

regard to whether the individuals have themselves filed charges of discrimination."

Docket No. 58 at 12.  The Court agrees.  As courts have previously held, "[t]he EEOC is

permitted to pursue claims on behalf of non-charging parties in its enforcement

capacity, regardless of whether it brings these claims under Section 706 (42 U.S.C.

§ 2000e-5) or Section 707 (42 U.S.C. § 2000e-6) of Title VII."  *EEOC v. Jetstream*

*Ground Servs., Inc.*, 134 F. Supp. 3d 1298, 1328 (D. Colo. 2015); *see also EEOC v.*

---

[7]Subsequent decisions "have limited this holding to situations in which a plaintiff entirely failed to file anything like a charge with the EEOC."  *Reveles v. Catholic Health Initiatives*, No. 16-cv-2561-WJM-CBS, 2017 WL 2672112, at *2 (D. Colo. June 21, 2017); *see, e.g.*, *Gad v. Kansas State Univ.*, 787 F.3d 1032, 1034, 1038 (10th Cir. 2015) (holding that Title VII's verification requirement is non-jurisdictional; *see also Cirocco v. McMahon*, 294 F. Supp. 3d 1086, 1093-95 (D. Colo. 2018) (finding that *Shikles* has not been overruled and determining, under Rule 12(b)(1), that "Plaintiff's failure to cooperate in the EEOC investigation and subsequent proceedings divest[ed] the court of subject matter jurisdiction").

*Darden Restaurants,* Inc., 2016 WL 9488709, at *2 (S.D. Fla. June 1, 2016) ("[T]he Court has uncovered no legal authority supporting the Defendants' position that all of the individuals represented by the EEOC in an enforcement action must also exhaust their administrative remedies."); *EEOC v. Unit Drilling Co.*, 4 F. Supp. 3d 1257, 1265 (N.D. Okla. 2013) ("[T]he EEOC may pursue 'any violations that it ascertains in the course of a reasonable investigation of the charging party's complaint.'" (brackets omitted) (quoting *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 331 (1980)); *EEOC v. Bare Feet Shoes of PA, Inc.*, 2006 WL 328355, at *3 (E.D. Pa. Feb. 10, 2006) ("[T]he EEOC may bring claims on behalf of individuals who have not filed a charge of discrimination with the agency.").

In their reply brief, defendants appear to concede that the EEOC may bring claims on behalf of non-charging parties, *see* Docket No. 62 at 7 ("Although the EEOC can arguably bring an enforcement action on behalf of individuals who have not filed a charge of discrimination, . . . its ability to do so is strictly limited."), but they argue that the EEOC's reasonable cause determination and pre-litigation conciliation efforts were insufficient to provide defendants with notice of, and an opportunity to conciliate, the claims against Mr. Blanchette and Mr. Hill. *Id.* at 7-9. Because defendants did not raise the argument of inadequate notice or challenge the sufficiency of the EEOC's determination letter in their opening brief, the Court will not consider these arguments in ruling on defendants' motion to dismiss. *See Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("Issues not raised in the opening brief

are deemed abandoned or waived." (internal quotation marks omitted)).[8]  Defendants

did assert that the claim against Mr. Blanchette "was never investigated by the EEOC,

nor was it ever part of the requisite pre-filing conciliation efforts."  Docket No. 53 at 13.

However, defendants do not support this argument by reference to the second

amended complaint.  Nor do they cite any evidence that would allow the Court to

determine whether the claims against Mr. Blanchette were investigated by the EEOC or

included in the Commission's pre-litigation conciliation efforts.  *See EEOC v. NM, Dep't

of Corrs.*, 2017 WL 6001752, at *3 (D.N.M. Dec. 4, 2017) (declining to resolve notice

issue on motion to dismiss where the evidence was insufficient to allow the court to

determine whether the defendant had sufficient pre-litigation notice of claims).  In any

event, defendants appear to raise only a facial challenge to the Court's jurisdiction, *see*

Docket 53 at 11 (asserting that the EEOC had failed to "carry its burden [of establishing

jurisdiction] in the [second amended complaint]), which would make consideration of

evidence outside of the pleadings inappropriate.  *See Holt*, 46 F.3d at 1002 ("In

reviewing a facial attack on the complaint, a district court must accept the allegations in

the complaint as true.").

Because the EEOC has not had an opportunity to respond to the argument that

---

[8]Defendants' argument that the claims brought on behalf of Mr. Blanchette and
Mr. Hill do not qualify for the single filing exception is both distinct from their argument
on inadequate notice and inapplicable to this case.  "[T]he single filing rule relates to an
individual's ability to *intervene* in an existing lawsuit without first filing a charge with the
EEOC and satisfying the required administrative prerequisites."  *Unit Drilling Co.*, 4 F.
Supp. 3d at 1265.  It "does not address the scope of the charges that may be brought
by the EEOC in an enforcement action."  *Id.*; *see also Bare Feet Shoes of PA, Inc.*,
2006 WL 328355, at *3 n.3 (finding that defendant's arguments regarding the "single
filing rule" were inapplicable because "[t]he EEOC's authority to pursue claims on behalf
of Ms. Watson in th[e] case [was] not based on the single filing rule").

defendants were not given adequate notice of, or an opportunity to conciliate, the claims asserted on behalf of Mr. Blanchette and Mr. Hill, defendants' motion to dismiss will be denied as to those claims.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Consolidated Partial Motion to Dismiss Plaintiffs' Second Amended Complaint and First Amended Complaint in Intervention [Docket No. 53] is **DENIED**.

DATED September 13, 2018.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge