IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-02472-PAB-SKC

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

LA'TONYA FORD,

    Intervenor Plaintiff,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY, et. al.,

    Defendants.

---

## ORDER

---

This matter comes before the Court on Intervenor Plaintiff La'Tonya Ford's Objection to August 5, 2020 Order [#248] Denying Motion for Leave to Endorse Expert Out of Time and Reopen Discovery for Limited Purposes [#220], and Granting Defendants' Motion to Exclude Plaintiff's Undisclosed Damages [#227] [Docket No. 259].

## I. BACKGROUND

On August 5, 2020, Magistrate Judge S. Kato Crews docketed an order addressing two motions: plaintiff La'Tonya Ford's Motion for Leave to Endorse Expert Out of Time and Reopen Discovery for Limited Purposes, Docket No. 220, and Defendants' Motion to Exclude Plaintiff's Undisclosed Damages, Docket No. 227, filed

by defendants Jackson National Life Insurance Company, Jackson National Life Distributors, LLC, and Jackson National Life Insurance Company of New York (collectively "Jackson"). Docket No. 248. Judge Crews denied Ms. Ford's motion and granted Jackson's motion. *Id*. at 12. Ms. Ford's objection was rendered moot when the Court granted Jackson's motion for summary judgment. Docket No. 271. After the Tenth Circuit's August 2022 remand, Docket No. 283-1, the Court reinstated Ms. Ford's objection. Docket No. 287.

The motions that were decided by Judge Crews' order concern the recalculation of Ms. Ford's damages. On the eve of the parties' final pretrial conference, Ms. Ford moved to reopen discovery for the limited purpose of "exploring Ms. Ford's damage calculations" and for leave to endorse Dr. Mark McNulty as an expert witness to conduct statistical analyses and testify as to her damages. Docket No. 220 at 1. Ms. Ford had endorsed a different expert, Dr. Patricia Pacey, to testify as to her damages, but she lost confidence in Dr. Pacey by January 2020. Docket No. 248 at 3 n.1; Docket No. 259 at 7-8. Judge Crews found that Ms. Ford failed to show good cause to endorse Dr. McNulty out of time and therefore there was no need for Ms. Ford to reopen discovery. Docket No. 248 at 8. Judge Crews denied Ms. Ford's motion. *Id.*

Judge Crews also ruled on Jackson's motion to exclude the damages calculation that Ms. Ford disclosed in her draft proposed final pretrial order filed in June 2020. *Id.* Ms. Ford claimed over $12,000,000 in damages in a disclosure provided to Jackson on June 1, 2020, a significant increase from the damages of $4,173,400 that she had previously disclosed during discovery. *Id.* at 3, 10. In May 2015, before she intervened in the case, Ms. Ford sent Jackson correspondence indicating that she calculated her

2

damages at over $12 million. *Id.* at 10. However, after intervening the case, Ms. Ford made three formal damages disclosures: $2,095,724 on August 31, 2018; $3,013,500 on November 30, 2018; and $4,137,400 on March 13, 2019. *Id.* at 2. The calculation of approximately $4 million was the last damages disclosure that was submitted before the close of discovery on August 2, 2019. *Id.* at 3. Judge Crews found that the June 2020 disclosure violated Federal Rule of Civil Procedure 26(e) and that the violation was neither substantially justified nor harmless. *Id.* at 11. He therefore granted defendants' motion to exclude the calculation of $12 million in damages at trial. *Id.* at 12.

Ms. Ford objects to Judge Crews' rulings on four grounds. First, she claims that her June 1, 2020 damages disclosure did not violate Rule 26. Docket No. 259 at 3. Second, she argues that the June 1, 2020 disclosure neither prejudiced nor surprised the defendants and that the factors that Judge Crews used to consider the defendants' motion should have weighed in her favor. *Id.* at 5. Third, she states that she should be permitted to endorse Dr. McNulty as an expert because there is adequate time to depose him and denying her the opportunity to endorse him would constitute an "extreme sanction." *Id.* at 8-9. Fourth, Ms. Ford argues that excluding her most recent damages calculation is an unwarranted sanction in light of Judge Crews' finding that she did not act in bad faith.

## II. LEGAL STANDARD

When a magistrate judge issues an order on nondispositive matters, "[a] party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is

3

contrary to law." *Id.* Under this standard of review, a magistrate judge's finding should not be rejected merely because the Court would have decided the matter differently. *See Anderson v. City of Bessemer*, 470 U.S. 564, 573, (1985). A district court must affirm a magistrate judge's decision unless, "on the entire evidence[, the district court] is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006). Neither party argues that the magistrate judge's discovery order was dispositive, and the Court does not find it to be. Thus, the Court will review the order under the clearly erroneous standard.

### III. ANALYSIS

#### A. Reopening Discovery for the Purpose of Endorsing Another Expert

Judge Crews analyzed the portion of Ms. Ford's motion seeking to reopen discovery according to the six factors in *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987). Docket No. 248 at 5. Judge Crews found that these factors weighed in favor of denying Ms. Ford's motion, particularly because Judge Crews did not believe Ms. Ford had been diligent in attempting to endorse Dr. McNulty to opine on her most recent damages calculation. *Id.* at 6-8.

Ms. Ford's objection addresses only two of the factors Judge Crews evaluated in his order: his determination that trial was imminent and his conclusion that defendants would be prejudiced if he were to grant her motion. Docket No. 259 at 8-9. Judge Crews concluded that the trial was imminent, despite not being set, because "this case is in its final stages" and "[t]he only remaining steps in this case relate to the trial." Docket No. 248 at 7. Ms. Ford argues that "the fact that there is no trial date, no final

4

pretrial order . . ., and more than adequate time to depose Dr. McNulty" weighs in favor of granting her order.  Docket No. 259 at 8.  However, she cites no caselaw indicating that Judge Crews erred by determining that the fact the case had advanced through the discovery phase to the trial phase weighed in favor of denying her motion.  *See id.*

Ms. Ford also asserts that her need to include Dr. McNulty's testimony to "properly present[] her case outweighs any prejudice to Defendants."  *Id.* at 9.  Judge Crews found that defendants "would be prejudiced by allowing the designation of Dr. McNulty and reopening discovery at this late juncture in this nearly four-year-old case."  Docket No. 248 at 8.  *Smith* asks courts to consider "whether the non-moving party would be prejudiced," not to weigh the prejudice of the non-moving party against the needs of the moving party.  834 F.2d at 169.  Accordingly, Judge Crews did not err by failing to consider Ms. Ford's motion in this light and simply evaluated whether defendants would be prejudiced.

Ms. Ford's other objection is that denying her motion to endorse Dr. McNulty and reopen discovery "is akin to leaving her without a case."  Docket No. 259 at 9.  She claims that, in light of her falling out with Dr. Pacey, she will be without a damages expert who is not a rebuttal witness and this will limit her ability to prove her case.  *Id.* at 8.  However, Ms. Ford did not raise this argument in her motion to endorse Dr. McNulty and reopen discovery,[1] and the objection does not challenge any of the rationales

---

[1] *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *see also Maurer v. Idaho Dep't of Corr.*, 799 F. App'x 612, 614 n.1 (10th Cir. 2020) (unpublished).

Judge Crews cited in support of his decision. Accordingly, the Court will not consider this portion of Ms. Ford's objection.

### B. Rule 26

Judge Crews concluded that Ms. Ford's disclosure on June 2, 2020 of her $12 million damages calculation violated Rule 26. Docket No. 248 at 8-12. Specifically, he found that Ms. Ford violated Rule 26(e), which places parties under a "continuing obligation to 'supplement or correct [their] disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Id.* at 9 (citing Fed. R. Civ. P. 26(e)(1)). Judge Crews concluded that Ms. Ford violated this rule because "she never disclosed a $12,000,000 damage calculation before discovery closed." *Id.* at 6. He cited *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.,* 125 F. Supp. 3d 1155, 1168-69 (D. Colo. 2015) (citing *Jama v. City and County of Denver,* 304 F.R.D. 289, 298-99 (D. Colo. 2014), which explains that information that would ordinarily be contained in a supplemental discovery response is "made known" to an opposing party only when it is "in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient." Docket No. 248 at 6. Judge Crews concluded that Ms. Ford's 2015 damages estimation "was rendered moot by the actual damage calculations she formally disclosed during discovery." *Id.* at 10 (citing *L-3 Commc'ns Corp.,* 125 F. Supp. 3d at 1170 ("It is only logical to require that a constructive disclosure of information under the 'made known'

6

provisions of Rule 26(e)(1)(A) be at least as specific and comprehensible as the express disclosure normally required by the rule would have been.") (citation omitted)).

Judge Crews also distinguished Jackson's "constructive knowledge" that Ms. Ford believed she was entitled to over $12 million from Jackson's actual knowledge that she intended to seek that amount at trial.  *Id.* at 10-11 (citing *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC,* No. 10-cv-02516-WJM-KLM, 2014 WL 2933189, at *2 (D. Colo. June 30, 2014) ("knowledge of the existence of a person is distinctly different from knowledge that the person will be relied on as a fact witness.")).

Ms. Ford argues that *L-3 Communications* and *Auraria* are distinguishable and that Judge Crews erred in relying on them.  Docket No. 259 at 5.  Ms. Ford states that her damage theory and calculation "was not buried in discovery or mentioned in passing" and that "equating Ms. Ford [sic] affirmative statements, whether pro se and/or through counsel, that her damages were in excess of $12 million to not disclosing witnesses, with a Rule 26 violation was clear error."  *Id*.  Ms. Ford is incorrect that Judge Crews erred in relying on these cases.

In *L-3 Communications,* the court considered whether plaintiff had violated Rule 26(e) by failing to supplement its answers to defendants' interrogatories or whether the relevant information had been sufficiently "made known" to defendants through discovery.  125 F. Supp. 3d. at 1168-71.  While Ms. Ford is correct that the information at issue in her case was not "buried in discovery," this fact does not make her case so different from *L-3 Communications* that it was error for Judge Crews to rely on it.

In *L-3 Communications*, the court considered whether information revealed in L-3's discovery documents was sufficient to constructively disclose information under Rule

7

26(e)(1)(A) in the face of L-3's failure to formally supplement its interrogatories. *Id.* at 1168-69 ("To satisfy the 'made known' requirement, a party's collateral disclosure of the information that would normally be contained in a supplemental discovery response must [be] in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response.") (citation omitted). Judge Crews cited *L-3 Communications* to support his conclusion that when Ms. Ford disclosed that she calculated her damages as being over $12,000,000 in settlement discussion in 2015, her calculation could not serve as the constructive equivalent of a formal disclosure of damages. *See* Docket No. 248 at 6, 10. Judge Crews observed that Ms. Ford's disclosure in settlement conversations before she intervened in this case was made moot by her later formal disclosures. *Id.* at 10. Plaintiff argues that her request in 2015 was not a passing reference in a discovery document, but she does not explain why a disclosure in a settlement conversation that is later contradicted by a formal disclosure should take precedent. *See* Docket No. 259 at 5. Accordingly, it was not error for Judge Crews to rely on the ruling from *L-3 Communications* that constructive knowledge of damages can only result from disclosures that are equivalent in form and specificity to the disclosure requirements under Rule 26.

As Ms. Ford implies, the contents of the disclosure at issue in *Auraria* is distinguishable from the disclosure at issue here. The plaintiff in *Auraria* hoped to call as witnesses individuals who it had identified in discovery documents, but who it had not designated as fact witnesses until the submission of the proposed final pretrial order. *Auraria,* 2014 WL 2933189 at *2. The *Auraria* court's observation that "knowledge of the existence of a person is distinctly different from knowledge that the person will be

8

relied on as a fact witness," *id.*, is relevant to Judge Crews' conclusion that "knowledge that Ford believed she was entitled to recover over $12,000,000 is distinctly different from . . . knowing Ford intended to seek that specific amount at trial." Docket No. 248 at 10. Accordingly, Judge Crews did not err in relying on *Auraria's* ruling that the context of a constructive disclosure is relevant to determining its adequacy. Furthermore, he committed no clear error in concluding that Ms. Ford's damages disclosure violated Rule 26.

### C.  *Woodworkers' Supply* Factors

Ms. Ford argues that Judge Crews erred in finding that the factors listed in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999), weighed in favor of excluding her $12,000,000 damages disclosure. Docket No. 259 at 5-7. After concluding that Ms. Ford's damages disclosure violated Rule 26, Judge Crews considered whether excluding the $12,000,000 damages calculation would be appropriate under Rule 37. Docket No. 248 at 11-12. Rule 37 states that, if "a party fails to provide information or identify a witness as required by 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Tenth Circuit outlined four factors in *Woodworkers' Supply* that courts should consider in determining whether a Rule 26 violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc.,* 170 F.3d at 993. Judge Crews found

that Ms. Ford did not act in bad faith, but he concluded that the other three factors weighed against her. Docket No. 248 at 11. Ms. Ford objects to his conclusions regarding all three of those factors.

Ms. Ford argues that her damages disclosure is not prejudicial to defendants, in contrast to Judge Crews' conclusion that it was inherently prejudicial under the circumstances because it was untimely.[2] Docket No. 259 at 5-6. Ms. Ford argues that *Gunn v. Carter,* No. 13-cv-2197-WJM-MEH, 2016 WL 8416758, at *2 (D. Colo. Oct. 24, 2016) (construing plaintiffs' motion to correct a mistake as a second motion to reconsider and denying it because "it is inexcusably late to raise new theories after summary judgment and a [f]irst [m]otion to [r]econsider"), the case Judge Crews cites to support this proposition, is "inapposite," noting that the case concerned a Fed. R. Civ. P. 60(b) motion introducing new damages theories. Docket No. 259 at 5-6. While Ms. Ford is correct that the motion in *Gunn* is different from hers because it was filed after the court granted summary judgment, the two cases are not so dissimilar as to make Judge Crews' reliance on *Gunn* for the proposition that Ms. Ford's untimely disclosure was inherently prejudicial clear error.

Furthermore, *Auraria* also supports his conclusion that untimeliness can make a disclosure prejudicial. In contrast to *Gunn,* the discovery period had lapsed in *Auraria*, but the summary judgment motion was still pending at the time the court rejected plaintiffs' belated disclosure. 2014 WL 2933189 at *2. The court ruled that plaintiff's disclosure of fact witnesses in a proposed pretrial order "during the pendency of a

---

[2] Ms. Ford also argues that her disclosure was not surprising to defendants. Docket No. 259 at 5. Since Judge Crews does not claim that it was, this argument is not relevant.

motion for summary judgment is akin to trial by ambush, only on paper." *Id.* The court noted that allowing discovery to be reopened could create "delay and mounting attorneys fees," causing prejudice. *Id.* at *3 (quoting *Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo. 2004)). Given these findings in *Auraria*, it was not error for Judge Crews to conclude that the untimeliness of Ms. Ford's disclosure was prejudicial.

Ms. Ford argues that any harm or prejudice to defendants could be eliminated if defendants cross-examine her on her damages theory. Docket No. 259 at 6. However, putting aside potential Rule 702 issues,[3] such cross-examination would require reopening discovery so that Jackson could learn of her facts and opinions, which Judge Crews has declined to do. Moreover, reopening discovery for the purpose of cross-examining Ms. Ford, as opposed to her expert, about her damages theory would prejudice Jackson through the additional time and expense involved. *See Auraria,* 2014 WL 2933189 at *3 (observing "delay and mounting attorneys fees can equate to prejudice") (citation omitted). Judge Crews did not err in concluding that this *Woodworkers' Supply* factor also weighed against Ms. Ford.

---

[3] Jackson indicates Ms. Ford's $12 million damage calculation does not indicate what portion "constitutes back pay versus the portion that constitutes front pay versus the portion that constitutes non-economic damages." Docket No. 227 at 8. Plaintiff responds that she "calculated her back pay damages at $2,210,515.37 and her front pay damages to be $12,309,361.06." Docket No. 236 at 5. This does not clarify how her current $12 million estimate is established. "[A]n award of front pay cannot be based solely on lay testimony regarding salary, benefits, and an employee's intent regarding her employment duration" because calculating "front pay requires a prediction of future events involving 'many complicated and interlocking factors.'" *Zimmerman v. Univ. of Utah*, 2018 WL 10152217, at *3 (D. Utah. Aug. 8, 2018) (quoting *Mason v. Okla. Turnpike Auth.*, 115 F.3d 1442, 1458 (10th Cir. 1997), *overruled on other grounds, TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495, 496 (10th Cir. 2011). However, testimony on "salary and benefits at the time of her termination" to support an award of back pay is a permissible subject of lay testimony. *Id.*

11

Finally, Ms. Ford notes that no trial date has yet been set for her case. Docket No. 259 at 6. This objection appears to respond to Judge Crews' conclusion that the third *Woodworkers' Supply* factor, the extent to which introducing additional information would disrupt the trial, weighed against Ms. Ford's motion. Docket No. 248 at 11. Judge Crews observed that, because Ms. Ford states her damages were calculated as exceeding $12 million early as 2015, it must have been a strategic choice to disclose a much smaller amount of damages. *Id.* Allowing plaintiff to reopen discovery and to select a new expert would delay the trial because it would allow plaintiff a second chance to set her trial strategy. *Id.* Judge Crews therefore concluded that "[Ms.] Ford's last-minute request has disrupted setting this matter for trial." *Id*. The Court is not left with the definite and firm conviction that Judge Crews committed a mistake. Accordingly, Ms. Ford has not shown that Judge Crews erred in reaching this conclusion.

### D.  Lesser Sanction

Ms. Ford argues that, even if she violated Rule 26, it was error for Judge Crews to exclude evidence of her $12 million damage calculation rather than to impose an alternative sanction under Rule 37. Docket No. 259 at 10. According to Ms. Ford, excluding this "critical evidence" is an "extreme sanction" because Judge Crews did not find that she acted willfully or in bad faith. *Id.* at 9 (citing *Forest Lab'ys, Inc. v. Ivax Pharms., Inc.,* 237 F.R.D. 106, 110 (D. Del. 2006)).

Rule 37 provides that, if "a party fails to provide information or identify a witness as required by 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was

substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Ms. Ford is correct in stating that the rule "vests the Court with discretion to impose 'other appropriate sanctions' in addition to or in lieu of an order striking witnesses or evidence not properly disclosed." *See Guara v. City of Trinidad*, No. 10-cv-02529-WJM-KMT, 2012 WL 3778290, at *3 (D. Colo. Aug. 31, 2012) (citing *Woodworker's Supply,* 170 F.3d at 993). However, the fact that the Court has the discretion to impose other sanctions does not necessarily mean that the Court errs when it chooses not to exercise such discretion. Judge Crews determined that Ms. Ford's Rule 26 violation was neither substantially justified nor harmless based on the *Woodworker's Supply* factors. Docket No. 248 at 11-12. Accordingly, he was authorized under Rule 37(c) to exclude her damages calculation of $12,000,000.

Ms. Ford argues that it was clear error to deny her motion because "denying Ms. Ford the opportunity to testify to her damages is an extreme and overly severe sanction." Docket No. 259 at 7. Ms. Ford states that, because "Dr. Pacey has fallen out of favor with plaintiff[,] denying Ms. Ford the opportunity for a damage expert who is not a rebuttal witness is akin to limiting Ms. Ford's ability to prove her case." *Id.* at 8. Plaintiff appears to argue that the sanction imposed by Judge Crews effectively dismisses plaintiff's case by preventing her from demonstrating any damages.[4] *See id.* To the extent plaintiff argues that Judge Crews' order bars plaintiff from testifying about

---

[4] Plaintiff notes that defendants filed a motion to exclude Ms. Pacey's opinions and the result of that motion could leave plaintiff without an expert on damages. *Id.* Plaintiff does not explain why an unrelated motion should be considered in evaluating the sanction under this motion. If anything, the fact that Ms. Pacey's opinions could be excluded for a reason other than plaintiff's deficient disclosures shows that barring Ms. Pacey from testifying on plaintiff's $12 million damage calculation on disclosure grounds is not prejudicial to Ms. Ford.

her own damages, the Court does not see where Judge Crews' order does so. Jackson sought to exclude Ms. Ford's "undisclosed and unsupported damages assertion," namely, the $12 million calculation. Docket No. 227 at 1. Jackson did not request that Ms. Ford be barred from presenting any evidence on damages, *see id.*, and Judge Crews did not exclude more evidence than what Jackson sought to exclude. Plaintiff is free to present evidence of her damages that was properly disclosed, assuming there are no Rule 702 issues; she is only barred by Judge Crews' order from presenting evidence of her $12 million estimate. Additionally, to the extent Ms. Ford argues that she will have no damages expert, Ms. Ford has not shown any support for the proposition that her disagreement with Ms. Pacey is a reason to allow her to belatedly disclose a new expert. Under this logic, Ms. Ford could fire her expert at any time and be entitled to select a new one regardless of resulting prejudice. Ms. Ford fails to show that Judge Crews' denial of her motion and grant of Jackson's motion was clearly erroneous or contrary to law.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Intervenor Plaintiff La'Tonya Ford's Objection[s] to August 5, 2020 Order [#248] Denying Motion for Leave to Endorse Expert Out of Time and Reopen Discovery for Limited Purposes [#220], and Granting Defendants' Motion to Exclude Plaintiff's Undisclosed Damages [#227] [Docket No. 259] are **OVERRULED**.

DATED March 31, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge