IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-02472-PAB-SKC

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

and

LA'TONYA FORD,

    Plaintiff-Intervenor,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,
JACKSON NATIONAL LIFE DISTRIBUTORS, LLC, and
JACKSON NATIONAL LIFE INSURANCE COMPANY OF NEW YORK,

    Defendants.

---

# ORDER

---

This matter is before the Court on defendants' Motion for Summary Judgment [Docket No. 204] and Defendants' Motion to Strike Evidentiary Exhibits to and New Facts in Plaintiff's Surreply in Opposition to Defendants [sic] Motion for Summary Judgment [Docket No. 247]. Plaintiff-intervenor La'Tonya Ford ("Ms. Ford") responded to defendants' motion, Docket No. 210, to which defendants replied. Docket No. 221. Ms. Ford sought leave to file a surreply, Docket No. 224, which the Court granted. Docket No. 225. Ms. Ford filed her surreply, Docket No. 233, and defendants moved to

strike the surreply.[1]  Docket No. 247.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On September 30, 2016, the Equal Employment Opportunity Commission (the "EEOC") filed this action.  Docket No. 1.  On November 14, 2016, the EEOC filed an amended complaint raising claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), against defendants Jackson National Life Insurance Company, Jackson National Life Distributors, LLC, and Jackson National Life Insurance Company of New York (collectively, "Jackson").  Docket No. 5.  On February 23, 2017, Ms. Ford and six other plaintiff-intervenors filed an amended complaint in intervention bringing Title VII claims against Jackson.  Docket No. 51.  On January 7, 2020, the EEOC, plaintiff-intervenors (with the exception of plaintiff-intervenor Ms. Ford), and Jackson entered into a consent decree, which resolved all of the plaintiff-intervenors' claims.  Docket No. 182.  Ms. Ford brings five claims for relief against Jackson.  Docket No. 51 at 18–22.  These claims are for race- and sex-based hostile work environment, race- and sex-based discrimination, and retaliation.  *Id.*

On April 29, 2020, Jackson filed a motion for summary judgment on all of Ms. Ford's claims.  Docket No. 204.  On June 11, 2020, Ms. Ford filed a motion seeking leave to file a surreply addressing Jackson's motion for summary judgment.  Docket No. 224.

---

[1] Neither plaintiff's surreply nor defendants' motion to strike address plaintiff's claim for constructive discharge.  *See* Docket Nos. 233, 247.  Both make arguments relating to Ms. Ford's hostile work environment claims, which, as discussed below, the Court does not need to address based on the Tenth Circuit's order.  *See* Docket No. 233 at 9; Docket No. 247 at 4.  Accordingly, the Court need not consider the surreply and attached exhibits and will deny Jackson's motion to strike as moot.

The Court granted Ms. Ford's motion. Docket No. 225. On July 23, 2020, Jackson filed a motion to strike Ms. Ford's surreply. Docket No. 247. Ms. Ford opposes Jackson's motion. Docket No. 249.

On March 11, 2021, the Court granted Jacksons' motion for summary judgment on all of Ms. Ford's claims and denied Jackson's motion to strike as moot. Docket No. 271 at 36 & n.16. The Court dismissed Ms. Ford's constructive discharge claim based on its finding that she could not support a hostile work environment claim. *Id.* at 35-36. Ms. Ford appealed the Court's grant of summary judgment on her claims. Docket No. 276; *see also* Docket No. 283-1 at 2.

On August 23, 2022, the Tenth Circuit Court of Appeals reversed the grant of summary judgment on Ms. Ford's retaliation claim to the extent it relied on a failure to promote theory, concluding that Ms. Ford provided sufficient evidence for a jury to decide whether Jackson's reasons for not promoting Ms. Ford on multiple occasions were pretext for retaliation based on her complaints of discrimination. Docket No. 283-1 at 34-37. The Tenth Circuit also reversed the grant of summary judgment on Ms. Ford's hostile work environment and constructive discharge claims, concluding that Ms. Ford had presented sufficient evidence to demonstrate that Ms. Ford's work environment was hostile based on sexual harassment and race based-harassment. *Id.* at 51-52, 57. Specifically, the Tenth Circuit found that Ms. Ford could demonstrate a genuine dispute regarding the objectively pervasive nature of sex-based harassment and that she subjectively perceived her work environment to be severely or pervasively hostile. *Id.* at 47-48, 51-52. The Tenth Circuit ruled Ms. Ford could make the same showing for race-based harassment. *Id.* at 55. The Tenth Circuit remanded the case for further

proceedings to allow the Court to consider Ms. Ford's constructive discharge claim, in light of the Tenth Circuit's ruling Ms. Ford had demonstrated the existence of a hostile work environment. *Id.* at 58-59. On November 7, 2022, the Court reinstated those portions of defendants' motion for summary judgment not foreclosed by the Tenth Circuit's decision and reinstated Jackson's motion to strike Ms. Ford's surreply. Docket No. 287 at 1. The Court will now consider Jackson's motion for summary judgment on Ms. Ford's constructive discharge claim.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to

demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The non-moving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Jackson argues that Ms. Ford's constructive discharge claim fails because Ms. Ford quit to take a promotion at another company and because she cannot show that the work environment was so intolerable as to leave a reasonable person in her position no "other reasonable choice but to resign." Docket No. 204 at 29 (quoting *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 806 (10th Cir. 2007)). Ms. Ford explains that constructive discharge is based on an objective standard and occurs "when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." Docket No. 210 at 29 (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1325 (10th Cir. 2004)). She argues that a reasonable person would have found the racial and gender harassment and discrimination that she experienced in combination with repeated discriminatory denials of promotions to be intolerable. *Id.* (citing *PVNF*, 487 F.3d at 805). Ms. Ford admits that she left Jackson, but only did so after being turned down for promotions

5

because managers made it their "personal mission to prevent her from being promoted to [external wholesaler] for purely discriminatory reasons," *id.* at 29–30, and after experiencing daily abuse culminating in emotional and physical distress to the point that she had to "retreat to the janitorial closet to cry." *Id.* at 30.  A reasonable person, Ms. Ford concludes, would have felt no other option but to resign.

Constructive discharge occurs when "the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."  *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986).  "Essentially, a plaintiff must show that she had 'no other choice but to quit.'" *Yearous v. Niobara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992)).  The conditions of employment must be objectively intolerable; the "plaintiff's subjective views of the situation are irrelevant."  *Id.*  The Tenth Circuit has observed that "a finding of constructive discharge may be based in part on a discriminatory act such as a failure to promote for discriminatory reasons," but "a finding of constructive discharge may not be based solely on a discriminatory act; there must also be aggravating factors that make staying on the job intolerable."  *See Bennett v. Quark, Inc.*, 258 F.3d 1220, 1229 (10th Cir. 2001) (quotations omitted), *overruled on other grounds as explained in Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1138 (10th Cir. 2003).  The Supreme Court has observed that when a constructive discharge case is based specifically on a hostile work environment, as opposed to other discriminatory acts, more is required than the evidence necessary to support a hostile work environment claim; a plaintiff "must show

6

working conditions so intolerable that a reasonable person would have felt compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004).

Jackson argues that no reasonable person in Ms. Ford's position would feel compelled to resign. [2] Docket No. 204 at 29.  Ms. Ford responds that the retaliatory failure to promote Ms. Ford combined with the "racial and gender based harassment and discrimination that Ms. Ford [] experienced on a daily basis" demonstrates that a reasonable person in Ms. Ford's position would have felt she had no choice but to quit. Docket No. 210 at 29-30.  The Tenth Circuit has ruled that a reasonable jury could find that Ms. Ford faced an abusive work environment based on sex-based harassment and race-based harassment.  Docket No. 283-1 at 47, 55.  Additionally, the Tenth Circuit held that a reasonable jury could find that Ms. Ford was repeatedly not promoted in retaliation for Ms. Ford's complaints of discrimination.  *Id.* at 34-37.  The disputes on Ms. Ford's retaliation and harassment claims show that this case is distinguishable from cases where a hostile work environment or a showing of retaliation on its own was insufficient to show constructive discharge.  *See Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 982 (10th Cir. 2008) (ruling harassment without aggravating factors

---

[2] Jackson argues that plaintiff's constructive discharge claim fails because her hostile work environment claim fails.  Docket No. 204 at 29.  Based on the Tenth Circuit's ruling that Ms. Ford's hostile work environment claims survive summary judgment, the Court declines to address this portion of Jackson's argument.  The Court, however, notes that, to the extent Ms. Ford argues that her allegations of a hostile workplace are enough on their own to support a claim of constructive discharge, *see* Docket No. 210 at 29 ("Based on the foregoing [evidence of a hostile work environment], a reasonable person would have found the racial and gender harassment and discrimination that Ms. Ford and others experienced on a daily basis made working at Jackson intolerable."), she incorrectly states the law by failing to address the "aggravating factors," *Bennett*, 258 F.3d at 1229, necessary to support a claim of constructive discharge.  The Court will not deny summary judgment on that basis.

7

insufficient to show constructive discharge); *PVNF*, 487 F.3d at 806 (ruling harassment was insufficient to support constructive discharge where plaintiff's only other evidence of aggravating factors was not established at the time of her resignation); *Stubbs v. McDonald's Corp.*, 2006 WL 1722267, at *13 (D. Kan. June 20, 2006) (ruling a failure to promote was insufficient on its own to demonstrate constructive discharge where plaintiff's hostile work environment claim failed). Based on the Tenth Circuit's findings that it disputed whether Ms. Ford faced a hostile work environment and that she was repeatedly not promoted for retaliatory reasons, the Court cannot say that the combination of retaliation and harassment was not "so intolerable that a reasonable person would have felt compelled to resign." *Suders*, 542 U.S. at 147.

Next, Jackson argues Ms. Ford was not constructively discharged as a matter of law because she chose to accept a promotion at a different company. Docket No. 204 at 28-29. The undisputed facts state that Ms. Ford waited until she had another job offer to quit and stated that she resigned from her position working for Jackson "because [she had her] Series 7, and [she] was offered employment" at another company. *Id.* at 14, ¶ 102; Docket No. 210 at 10, ¶ 102. Jackson's argument that accepting a promotion bars a constructive discharge claim misstates the standard for determining the difference between a constructive discharge and a voluntary termination. Jackson correctly identifies that courts have considered actively searching for a job before an alleged constructive discharge can be evidence that a resignation was voluntary. *See, e.g.*, *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222-23 (10th Cir. 2000) (ruling that, where plaintiff was told to sign a settlement agreement or face potential disciplinary action, plaintiff's efforts to secure a job before receipt of the letter was evidence plaintiff

was not compelled). However, searching for or accepting a new job is not dispositive of whether an employee was constructively discharged. "The availability of the alternative job relates to the question of whether a reasonable employee would have felt compelled to leave." *Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1229 (10th Cir. 2009). Courts consider the "totality of the circumstances" to determine whether a resignation was voluntary. *Lighton*, 209 F.3d 1222. In *PVNF*, the Tenth Circuit noted that evidence a plaintiff wanted to return to her job after resigning did not require judgment as a matter of law on a constructive discharge claim because "the test for constructive discharge is an objective one. This standard cuts both ways — just as an employee's subjective feelings that her working conditions were intolerable is not controlling in the constructive discharge analysis, neither is an employee's desire to continue working despite conditions so intolerable any reasonable employee would have long since quit." *PVNF*, 487 F.3d at 806 n.10. Here, the Court will not interpret Ms. Ford's desire to continue working until she secured another position as dispositive of her constructive discharge claim. The fact that Ms. Ford accepted a promotion evidences her subjective motivations for leaving her job, but it does not ultimately establish that a reasonable person would not feel her only choice was to resign. In examining whether Ms. Ford could demonstrate an objectively hostile work environment, the Tenth Circuit noted that "a victim's ability to succeed at her job in the face of harassment should not then mean that she has forfeited her right to bring a claim for a hostile work environment." Docket No. 283-1 at 49 (citing *Gabrielle M. v. Ill. Sch. Dist. 163*, 315 F.3d 817, 828 (7th Cir. 2003) (Rovner, J., concurring)). Similarly, Ms. Ford's claim for constructive discharge should not be forfeited where she was able to secure a promotion at a different

company.  The Court will decline to grant summary judgment on Ms. Ford's constructive discharge claim as a matter of law because Ms. Ford secured employment before resigning.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the portion of defendants' Motion for Summary Judgment [Docket No. 204] that the Court reinstated, *see* Docket No. 287 at 2, is **DENIED**.  It is further

**ORDERED** that defendants' Motion to Strike Evidentiary Exhibits to and New Facts in Plaintiff's Surreply in Opposition to Defendants [sic] Motion for Summary Judgment [Docket No. 247] is **DENIED as moot**.

DATED March 31, 2023.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge