IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-02472-PAB-TPO

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

And

LA'TONYA FORD,

    Intervenor Plaintiff,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,
JACKSON NATIONAL LIFE DISTRIBUTORS, LLC, and
JACKSON NATIONAL LIFE INSURANCE COMPANY OF NEW YORK,

    Defendants.

## ORDER

This matter comes before the Court on ten motions recently filed by pro se intervenor plaintiff La'Tonya Ford. These motions are the Emergency Motion for Immediate Injunctive Relief and Sanctions for Ongoing Retaliation and Obstruction of Justice [Docket No. 361], the Motion for Temporary Restraining Order and Protective Order [Docket No. 369], the Motion to Expedite Consideration of Motions and Request for Urgent Relief [Docket No. 371], the Corrected Revision Motion for Temporary Restraining Order and Protective Order [Docket No. 381], the Corrected Revision Motion to Expedite Consideration of Motions and Request for Urgent Relief [Docket No. 385], and Plaintiff's Motion for Summary Judgment [Docket No. 388], Plaintiff's Motion

for Summary Judgment [Docket No. 389], the Emergency Motion for Immediate Injunctive Relief and Sanctions for Ongoing Retaliation and Obstruction of Justice [Docket No. 392], the Corrected Revision Motion to Expedite Consideration of Motions and Request for Urgent Relief [Docket No. 394], and the Corrected Revision Motion for Temporary Restraining Order and Protective Order [Docket No. 399].[1] Ms. Ford filed these ten motions, as well as seven similar motions that have been referred to the assigned magistrate judge, in the last several weeks, the first one having been filed on January 3, 2025, *see* Docket No. 343, and the last on February 3, 2025. *See* Docket No. 399.

Also before the Court is Defendants' Motion to Strike Plaintiff's Untimely and Noncompliant Motions for Summary Judgment [Docket No. 402]. Ms. Ford filed two responses, which appear to be nearly identical, to defendants' motion. Docket Nos. 404, 405.

## I. BACKGROUND

The allegations in Ms. Ford's underlying employment-discrimination complaint against her former employer are discussed in detail in *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1209-13 (10th Cir. 2022). The motions presently before the Court do not involve those claims, but instead involve Ms. Ford's allegations that various parties, including Ms. Ford's neighbors, the Federal Bureau of Investigation, and numerous other government and private entities are engaged in a coordinated

---

[1] Ms. Ford does not explain what the "corrected revision" language in the titles of Docket Nos. 381, 385, 394, and 399 means. It appears to the Court that Docket Nos. 381 and 399 are identical and may be an expansion of Docket No. 369. Docket Nos. 385 and 394 also appear to be identical, though it is not clear whether they relate to another motion.

campaign of harassment against Ms. Ford.  *See, e.g.*, Docket No. 361 at 2-3.  The events underlying Ms. Ford's allegations appear to fall into at least three broad categories.[2]

The first category of events involves Ms. Ford's interactions with her neighbors.  Ms. Ford alleges that her neighbors are "gangstalking" her.  *Id.* at 4.  As evidence of this, she provides several photos of people walking on her street, *id.* at 9, as well as links to YouTube videos of her neighbors engaged in activities such as walking a dog, washing a car, or having their gutters cleaned.  *Id.* at 12, 18.  Ms. Ford also believes that her neighbors are using "Directed Energy Weapons and the release of microscopic pests through the vents to torment Plaintiff."  *Id.* at 4.

The second category of events involves Ms. Ford's observations of vehicles and associated vehicle noises.  Ms. Ford complains of "the deliberate gunning of engines outside Plaintiff's residence all day long."  *Id.* at 10.  She also complains of tractor-trailer trucks and public-safety vehicles making noise near her home using their airbrakes, *id.* at 20.  Ms. Ford believes that helicopters and other aircraft are flying over her in order to conduct aerial surveillance of her.  *Id.* at 8, 12.

The third category of events involves Ms. Ford's experiences with common-place inconveniences and frustrations.  An Amazon delivery truck once blocked her driveway.

---

[2] The Court primarily references the allegations made in Docket No. 361, but each of the seventeen motions that Ms. Ford has submitted to the Court since January 3, 2025 alleges substantially the same conduct.  *See* Docket Nos. 343, 345, 348, 361, 369, 370, 371, 381, 384, 385, 388, 389, 392, 393, 394, 395, 399.  An eighteenth motion, Docket No. 347, is not included in this count because the assigned magistrate judge denied Docket No. 347 as moot after finding that it was essentially the same as Docket No. 348.

*Id.* at 3.[3]  The power went out when she was shopping at an Aldi grocery store.  *Id.* at 4.  The property tax assessment of Ms. Ford's residence is higher than she believes it should be.  *Id.* at 25-27.

Ms. Ford perceives a recurring theme in all of these events – that defendants and their attorneys are orchestrating a massive effort to harass her.  *Id.* at 1, 4, 24.  She believes that defendants have employed the individuals and entities discussed above – the neighbors, the local fire and police department, the grocery store, the delivery trucks, the FBI – to further this campaign of harassment.  *See generally* Docket No. 361.  Ms. Ford attempts to identify connections between the various parties to prove her point.  For example, Ms. Ford alleges that the lights went out in the Aldi grocery store because the defendants' former law firm in this case, Seyfarth Shaw LLP, represents Aldi in other legal matters and therefore must have directed Aldi to turn off the lights in order to intimidate Ms. Ford.  *Id.* at 4.  Ms. Ford also seems to believe the surname "Harris" may connect some of these entities and the campaign of harassment against her.  Docket No. 369 at 2-4; Docket No. 381 at 7.  Ms. Ford alleges that at least some of these incidents of harassment and surveillance occurred while she was working on the present case and that these incidents were meant to deter her from pursuing her case.  Docket No. 361 at 16.

## II. ANALYSIS

Preliminary injunctions and temporary restraining orders provide "intermediate relief of the same character as that which may be finally granted."  *Adams v. Ade*, 2019

---

[3] Delivery vehicles appear to be a recurring concern for Ms. Ford, as she also alleges that the United States Postal Service and delivery companies UPS and FedEx are involved in the harassment campaign.  *Id.* at 21.

WL 3456814, at *2 (E.D. Okla. July 31, 2019) (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)); *see also Harvey v. Martinez*, No. 22-cv-00369-NYW-TPO, 2024 WL 5086080, at *8 (D. Colo. Dec. 12, 2024). Thus, a party seeking such equitable relief must show "a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Harvey*, 2024 WL 5086080, at *8 (quoting *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)). The Court will not grant intermediate relief that exceeds or does not relate to the underlying claims in the plaintiff's complaint. *Id.*

Ms. Ford's underlying claims in this case relate to workplace harassment that occurred when Ms. Ford worked at Jackson National Life Insurance Company until October 2010. *Ford*, 45 F.4th at 1209-13. The motions before the Court have nothing to do with these allegations. Rather, they involve claims that defendants are "harassing" her for reasons that she does not explain. Moreover, the allegations do not identify any colorable link to the defendants or to the underlying case. Since the allegations in Ms. Ford's motions do not bear any relationship to the conduct asserted in the complaint and do not show any plausible connection to the defendants, the Court will deny each of the motions. *See Harvey*, 2024 WL 5086080, at *8.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Emergency Motion for Immediate Injunctive Relief and Sanctions for Ongoing Retaliation and Obstruction of Justice [Docket No. 361] is **DENIED**. It is further

**ORDERED** that the Motion for Temporary Restraining Order and Protective Order [Docket No. 369] is **DENIED**. It is further

**ORDERED** that the Motion to Expedite Consideration of Motions and Request for Urgent Relief [Docket No. 371] is **DENIED**.  It is further

**ORDERED** that the Corrected Revision Motion for Temporary Restraining Order and Protective Order [Docket No. 381] is **DENIED**.  It is further

**ORDERED** that the Corrected Revision Motion to Expedite Consideration of Motions and Request for Urgent Relief [Docket No. 385] is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 388] is **DENIED**.[4]

**ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 389] is **DENIED**.  It is further

**ORDERED** that the Emergency Motion for Immediate Injunctive Relief and Sanctions for Ongoing Retaliation and Obstruction of Justice [Docket No. 392] is **DENIED**.  It is further

**ORDERED** that the Corrected Revision Motion to Expedite Consideration of Motions and Request for Urgent Relief [Docket No. 394] is **DENIED**.  It is further

**ORDERED** that the Corrected Revision Motion for Temporary Restraining Order and Protective Order [Docket No. 399] is **DENIED**.  It is further

---

[4] The Court finds that Docket Nos. 388 and 389, while nominally styled as motions for summary judgment, are essentially the same as all of Ms. Ford's other recent motions.  Even if the Court were to treat Docket Nos. 388 and 389 as motions for summary judgment, the deadline for filing dispositive motions in this case was April 29, 2020.  Docket No. 197.  Therefore, these motions are denied as untimely.

**ORDERED** that is Defendants' Motion to Strike Plaintiff's Untimely and Noncompliant Motions for Summary Judgment [Docket No. 402] is **DENIED as moot**.

DATED February 6, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge