IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-02472-PAB-TPO

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

And

LA'TONYA FORD,

    Intervenor Plaintiff,

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY,
JACKSON NATIONAL LIFE DISTRIBUTORS, LLC, and
JACKSON NATIONAL LIFE INSURANCE COMPANY OF NEW YORK,

    Defendants.

## ORDER

This matter comes before the Court on plaintiff's motions for a temporary restraining order, Docket Nos. 420, 422, 423, 446, 447, 488, plaintiff's motions for clarification and reconsideration of summary judgment rulings, Docket Nos. 415, 433, 434, 434-1, plaintiff's motion to correct the docket, Docket No. 421, defendants' motion to impose filing restrictions, Docket No. 403, defendants' motion to strike, Docket No. 592, and plaintiff's motion to file an oversized brief in response to the motion to strike, Docket No. 605.

I. **BACKGROUND**

The allegations in plaintiff La'Tonya Ford's underlying employment-discrimination complaint against defendants, who are her former employer and its associated corporate entities, are discussed in detail in *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1209-13 (10th Cir. 2022). The motions presently before the Court do not involve those claims. Instead, the motions filed by Ms. Ford involve allegations that various parties, including Ms. Ford's neighbors, the Federal Bureau of Investigation, and numerous other government and private entities are engaged in a coordinated campaign of harassment against Ms. Ford. *See, e.g.*, Docket No. 446; *see also* Docket No. 408 at 2-4 (summarizing some of the allegations made by Ms. Ford in other, similar motions). Ms. Ford filed dozens of motions to this effect beginning in January 2025. *See, e.g.*, Docket Nos. 343, 395, 475, 526, 562. Defendants' motion to impose filing restrictions was in response to the initial flurry of filings. Docket No. 403 at 1. Defendants' motion to strike, Docket No. 592, is directed at Ms. Ford's attempt to submit an "expert" report, which Ms. Ford authored herself, Docket No. 541 at 1, that claims damages suffered as a result of the supposed recent harassment.

II. **ANALYSIS**

    A. <u>**Motions for Temporary Restraining Order**</u>

Ms. Ford filed several motions related to her request for a temporary restraining order. Docket Nos. 420, 422, 423, 446, 447, 448. She characterizes Docket No. 423 as seeking clarification as to why the Court denied her previous motions for a temporary restraining order, filed at Docket Nos. 361, 369, 371, 381, 385, 392, 394, 399. *See*

Docket No. 423 at 1-2.[1]  Ms. Ford states that, "Plaintiff seeks clarification regarding whether the Court's denial was based on an assessment of the merits of the allegations, as the retaliatory actions described are not only ongoing but have intensified."  *Id.* at 2.

The Court's previous order, issued on February 8, 2025, addressed ten motions filed by Ms. Ford, Docket Nos. 361, 369, 371, 381, 385, 388, 389, 392, 394, 399, characterized by Ms. Ford as either motions for injunctive relief or for summary judgment.  Docket No. 408 at 1-2.  In the portion of the order denying the motions for injunctive relief, the Court explained that motions for injunctive relief, such as a temporary restraining order or preliminary injunction, must show a connection between the injury claimed in the motion and the conduct asserted in the complaint.  *See* Docket No. 408 at 5 (quoting *Harvey v. Martinez*, No. 22-cv-00369-NYW-TPO, 2024 WL 5086080, at *8 (D. Colo. Dec. 12, 2024)).  Ms. Ford's motions for injunctive relief involved claims that defendants and various other parties are "harassing" and "gangstalking" her.  Docket No. 408 at 2-4.  The conduct asserted in the complaint,

---

[1] In Docket No. 422, Ms. Ford asks the Court to accept a "corrected revision" of Docket No. 420, as "Plaintiff seeks to update and amend the original submission to reflect necessary changes and corrections due to the ongoing and unlawful actions perpetrated by the Defendants and law enforcement.  Specifically, the Plaintiff continues to be subjected to assaults involving directed energy weapons and sonic waves."  Docket No. 422 at 2.  Ms. Ford then submitted the amended motion at Docket No. 423.  The Court finds that while Docket No. 423 is several pages longer than Docket No. 420, the substance of the two motions is essentially the same.  The essence of both is Ms. Ford's belief that the Court's February 6, 2025 order was insufficiently clear in its reasons for denying Ms. Ford's motions for injunctive relief.  *Compare* Docket No. 420 at 1-2, 6-7, *with* Docket No. 423 at 1-2, 6-8.  While its ruling would not change regardless of whether it considers Docket No. 420 or Docket No. 423 as the operative motion for clarification, the Court will grant the request found in Docket No. 422 to substitute Docket No. 423 for Docket No. 420.

3

Docket No. 51,[2] however, involves claims of workplace harassment that Ms. Ford experienced when she worked at Jackson National Life Insurance Company – a job she left in October 2010. *Id.* at 5. The Court denied the motions for injunctive relief because the allegations in those motions did not relate to the underlying case or to the defendants in any colorable way. *Id.* As the Court finds that no further clarification of its order is necessary, it will deny the motion for clarification found at Docket No. 423.

For the reasons explained in the Court's February 6, 2025 order, *id.* at 4-5, the Court will deny the motions for a temporary restraining order found at Docket Nos. 446, 447, and 448. The Court finds that each of these motions raises the same claims as the other motions for injunctive relief – namely, assertions that various governmental and private actors are using "directed energy weapons" and other tools to harass Ms. Ford. *Compare* Docket Nos. 446, 447, 448 *with* Docket Nos. 361, 369, 381, 392, 399. Since these motions do not relate to the underlying workplace harassment claims in this case, the Court will deny the motions.

### B. Motions for Clarification and Reconsideration Regarding Summary Judgment Rulings

Ms. Ford filed four motions regarding the issue of summary judgment. Docket Nos. 415, 433, 434, 434-1. On February 6, 2025, the Court denied two of Ms. Ford's motions that she labeled as summary judgment motions. *See* Docket No. 408 at 6. Ms. Ford describes Docket No. 415 as a motion for clarification seeking to understand why

---

[2] Docket No. 51 is Ms. Ford's first amended complaint as an intervenor plaintiff. *See* Docket No. 51 at 1. The EEOC had previously filed a second amended complaint on behalf of Ms. Ford and other former employees of the defendants. *See* Docket No. 31 at 1. The Court has previously noted that the allegations in the two complaints are substantially similar. *See* Docket No. 136 at 11.

4

the Court denied her summary judgment motions, *see* Docket No. 420 at 1-2, and describes Docket Nos. 433 and 434-1 as motions seeking reconsideration of that denial.

In the portion of its February 6, 2025 order denying Ms. Ford's motions for summary judgment, the Court explained that those motions, "while nominally styled as motions for summary judgment, are essentially the same as all of Ms. Ford's other recent motions." Docket No. 408 at 6 n.4. The Court then stated that, "[e]ven if the Court were to treat Docket Nos. 388 and 389 as motions for summary judgment, the deadline for filing dispositive motions in this case was April 29, 2020. Docket No. 197. Therefore, these motions are denied as untimely." *Id.*

Ms. Ford argues that the Court's order "lacks sufficient detail or explanatory content regarding the specific grounds for the denial, particularly with respect to the timeliness of the motion and the proper consideration of Plaintiff's evidence in the context of the legal standards for summary judgment." Docket No. 415 at 2. Ms. Ford asks whether the Court denied the motion because it was untimely, whether the Court considered the evidence and legal arguments presented in the motion, and "whether additional filings, amendments, or hearings are necessary to address any perceived deficiencies in the initial motion, or if any other procedural actions must be undertaken to ensure proper progression in this matter." *Id.*

Ms. Ford subsequently filed a motion to reconsider the Court's order denying summary judgment. Docket No. 434-1.[3] Ms. Ford moved for reconsideration based on the grounds of new evidence and on the need to correct a clear error. *Id.* at 3.

---

[3] On February 19, 2025, Ms. Ford filed a motion to reconsider the Court's ruling on her summary judgment motions. Docket No. 433. On February 20, 2025, Ms. Ford filed a motion asking the Court to accept a "corrected revision" of Docket No. 433.

5

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.*, 57 F.3d 941, 948 (10th Cir. 1995)). Motions for reconsideration are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991)).

Ms. Ford identifies two pieces of information that she believes constitute "new evidence." Docket No. 434-1 at 4. First, she identifies a case filed in the Northern District of Ohio against the same defendants as in this case. *Id.* Ms. Ford asserts that the law firm Seyfarth Shaw LLP is somehow nefariously involved in that case as well as the case before this Court. *Id.* Second, Ms. Ford states that she has "new witness statements, video footage, and expert reports" that support her claims that "law enforcement, under the influence of Defendants and their counsel, has been directly targeting Plaintiff with surveillance and harassment." *Id.* The Court finds that this information is not "new evidence," but instead constitutes additional unsupported and implausible allegations similar to those that Ms. Ford has made throughout her recent motions and which the Court has rejected. The Court therefore denies this basis for reconsideration.

---

Docket No. 434 at 1. Ms. Ford attached the updated motion to her filing. *See* Docket No. 434-1. While the "corrected" version of the motion is longer than the original, the contents of the two motions are substantially the same. *Compare* Docket No. 433 *with* Docket No. 434-1. While its ruling would not change regardless of whether it considers Docket No. 433 or Docket No. 434-1 as the operative motion to reconsider, the Court will grant the request found in Docket No. 434 to substitute Docket No. 434-1 for Docket No. 433.

Ms. Ford's "clear error" argument for reconsideration focuses on her belief that her summary judgment motions were timely. Docket No. 434-1 at 3-4. She argues that, because the Court did not issue a new scheduling order after the Tenth Circuit remanded the case to the Court, the timeliness of her motion is not governed by the pre-remand scheduling order. *Id.* The motion also argues that Ms. Ford has presented sufficient evidence to justify judgment as a matter of law, that the Court may have misapplied the applicable legal standard for summary judgment motions, and that new evidence has surfaced further substantiating Ms. Ford's entitlement to summary judgment. *Id.* at 2.

The Tenth Circuit issued its opinion in this case on August 23, 2022. *Ford*, 45 F.4th at 1202. The Tenth Circuit issued the mandate returning jurisdiction to this Court on September 14, 2022. Docket No. 284. On October 3, 2022, the Court reinstated the action, ordered the parties to file status reports indicating which motions and briefing should be reinstated, and ordered the parties to contact then-Magistrate Judge S. Kato Crews, the assigned magistrate judge, to "re-set relevant deadlines." Docket No. 285. Based on the parties' status reports, the Court reinstated the motions and briefing on multiple matters, none of which were dispositive motions. *See* Docket No. 287 at 1.

On December 1, 2022, Judge Crews held a status conference at which the attorneys for both sides agreed that there were no deadlines that needed to be set. Docket No. 291. Judge Crews directed the parties to contact the court if they believed that an amended pretrial order would be necessary. *Id.* The parties did not contact the court about amending the pretrial order or about re-setting deadlines. As such, the original scheduling order, which set a dispositive motion deadline of April 29, 2020,

7

remained in effect. Therefore, Ms. Ford's motions for summary judgment filed in January 2025 were untimely, and the Court properly denied the motions. *See Merrill Scott & Assocs., Ltd. v. Concilium Ins. Servs.*, 253 F. App'x 756, 763 (10th Cir. 2007) (unpublished) (holding that a district court did not abuse its discretion in striking an untimely motion).

Moreover, as the Court stated in its previous order, the motions at issue were not actually motions for summary judgment. *See* Docket No. 408 at 6 n.4 ("Docket Nos. 388 and 389, while nominally styled as motions for summary judgment, are essentially the same as all of Ms. Ford's other recent motions."). Ms. Ford's motions for summary judgment did not comply with the Court's practice standards for summary judgment, *see* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3, and contained substantially the same content as most, if not all, of the other motions that Ms. Ford filed in January and February 2025. *Compare* Docket Nos. 388, 389 *with* Docket No. 381. Finally, the content of the motions did not relate to the underlying claims in this case, and summary judgment is not appropriate on matters that were not alleged in the underlying complaint. *See Pauly v. New Mexico Dep't of Pub. Safety*, 2014 WL 12698711, at *4 (D.N.M. Jan. 22, 2014) (citation omitted); *see also In re Diaz Cruz*, 2013 WL 3153993, at *6 (Bankr. D.P.R. June 19, 2013) (collecting cases). Thus, the Court's decision to deny Ms. Ford's motions for summary judgment was not "clear error." The Court will therefore deny Ms. Ford's motion for reconsideration.

Given that the Court has explained why reconsideration is not warranted, the Court will deny Ms. Ford's motion for clarification, Docket No. 415, as moot.[4]

### C. Motion to Correct Docket

Ms. Ford also filed a motion to correct an entry on the docket. Docket No. 421. She explains that her filing at Docket No. 416 is a response in opposition to defendants' motion to impose filing restrictions. Docket No. 421 at 2. However, the docket currently lists this filing as a response in support of defendants' motion. The Court will grant this part of Ms. Ford's motion and direct the clerk of the court to update the docket sheet to reflect that plaintiff's brief, filed at Docket No. 416, is in opposition to, rather than in support of, Docket No. 403.

Ms. Ford states that, "[a]s previously communicated, I had requested that [Docket No. 416] not be posted to the public docket and should instead be classified or treated differently to maintain confidentiality and prevent public disclosure at this stage of the proceedings." *Id.* at 1-2. Ms. Ford does not identify the prior communication that she references. Nor does she supply any explanation in the motion as to why the filing should be restricted from public access. In fact, the filing in question contains substantially the same information that Ms. Ford has submitted in the various other motions that she has filed, without restriction, in this case. The Court therefore finds that placing this document under restriction is not warranted and will deny this part of Ms. Ford's motion.

---

[4] To the extent that Ms. Ford's motion seeks guidance on how she should proceed in this case, *see* Docket No. 415 at 2, the Court denies the motion. While a court must construe a pro se party's filings liberally, it may not act as that party's advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

D. **Motion to Strike**

Defendants move to strike Ms. Ford's "Expert Witness Report" filed on May 14, 2025. *See* Docket No. 592 (moving to strike Docket No. 541). Ms. Ford prepared the report at issue herself, referring to herself in the report as a "financial data analyst and damages expert witness." Docket No. 541 at 1. The report lays out a series of calculations, *id.* at 4-53, and ultimately concludes that Ms. Ford is entitled to $1,592,453,580.14 in damages. *Id.* at 53.

Defendants argue that the Court should strike this report. *See* Docket No. 592 at 7-8. The Court agrees. On June 3, 2020, Ms. Ford filed a motion seeking leave to substitute her endorsed damages expert with a different expert and to reopen discovery on the issue of damages. Docket No. 220 at 1.[5] On August 5, 2020, Judge Crews denied this motion. Docket No. 248 at 8. Judge Crews's ruling explained that Ms. Ford had ample time throughout the discovery process to endorse an expert supporting an increased damages claim and that allowing the endorsement of new experts and increases to the claimed damages would be prejudicial to defendants. *Id.* Ms. Ford objected to the ruling. Docket No. 259.

On March 31, 2023, after the Tenth Circuit remanded the case, the Court overruled Ms. Ford's objection, finding that Judge Crews's ruling was neither clearly erroneous nor contrary to law. Docket No. 292 at 14. For the same reasons discussed in Judge Crews's prior order, Docket No. 248, and the Court's prior order, Docket No. 292, the Court will strike this expert report. The deadline for disclosing experts and new theories of damages has long passed. Moreover, the dramatic increase in claimed

---

[5] At that time, Ms. Ford asserted that her damages were $12,846,653.44, rather than her previous claim of $4,137,400. *See* Docket No. 248 at 2-3.

damages from $4 million to $1.5 billion appears to be based on Ms. Ford's implausible allegations that she is being harassed by various governmental and private actors. *See, e.g.*, Docket No. 541 at 21, 23, 33, 49.  These allegations are not the subject of the underlying complaint in this case, and thus the damages associated with those allegations are not appropriately included in this case.  The Court will therefore grant the motion to strike.[6]

### E. Motion for Filing Restrictions

Defendants' motion for filing restrictions requests two forms of relief from the Court.  *See* Docket No. 403 at 2.  First, defendants ask that Ms. Ford be required to seek leave of the Court prior to filing "motions, supplements, or other materials in this matter."  *Id.*  Second, defendants ask that they be relieved of the obligation to respond to Ms. Ford's motions, pending a status conference on March 27, 2025.  *Id.*

"Filing restrictions are appropriate where '(1) the litigant's lengthy and abusive history' is set forth; (2) the court provides guidelines as to what the litigant must do to obtain permission to file . . .; and (3) 'the litigant receives notice and an opportunity to oppose the court's order before it is instituted.'"  *Lundahl v. Halabi*, 600 F. App'x 596, 609-610 (10th Cir. 2014) (unpublished) (quoting *Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010)).  Whether a litigant's conduct is abusive can be shown by a "history of repetitive and meritless claims, or the pursuit of numerous facially inappropriate motions in the present proceeding."  *Id.* at 609 (quoting *Okon v. Comm'r,*

---

[6] Ms. Ford filed a fifty-page response to defendants' motion to strike.  *See* Docket No. 607.  On the same day as she filed her response, Ms. Ford moved for permission to file a brief that exceeded the Court's page limitations.  Docket No. 605.  The Court will grant that motion and has considered Ms. Ford's response in ruling on the motion to strike.

11

26 F.3d 1025, 1027 (10th Cir. 1994)) (alteration omitted).  Any such restriction should be "carefully tailored restrictions under the appropriate circumstances."  *Sieverding v. Colorado Bar Ass'n*, 469 F.3d 1340, 1343 (10th Cir. 2006) (citation omitted).

The Court agrees with defendants that Ms. Ford's January 2025 filings were problematic, given their frequency, length, and lack of connection to the underlying case.  The Court finds, however, that recent rulings by the assigned magistrate judge have provided defendants with most, if not all, of the relief they sought through this motion.  On March 27, 2025, after holding a status conference, Magistrate Judge Timothy P. O'Hara adopted a variety of rules for filings in this case.  Docket No. 514 at 4.  These rules included provisions for what information could be included in motions and the length of these motions and directed that plaintiff's filings should be placed under restriction.  *Id.*  Most importantly for the purposes of this motion, the rules state that:

> Until further order of the Court, defendants need not respond to Intervenor Plaintiff's pleadings unless specifically ordered by the Court.  If motions are filed by Intervenor Plaintiff that are relevant to the case and related to the employment law claims that remain, then the Court will direct counsel for Defendants to respond.

*Id.*[7]  On June 25, 2025, after holding another status conference, Judge O'Hara amended the filing rules.  Docket No. 617 at 4-5.  The amended rules continued to

---

[7] On April 1, 2025, Ms. Ford filed "Plaintiff's Written Objection to the Court's Refusal to Address Judicial Misconduct, Perjury, and Hardship Requests."  Docket No. 521 at 1.  Ms. Ford states that the objection is pursuant to Federal Rule of Civil Procedure 46 and Federal Rule of Appellate Procedure 10(a).  *Id.*  Most of the filing is difficult to follow and does not appear to be the kind of objection contemplated by Federal Rule of Civil Procedure 72(a).  But Ms. Ford does appear to object to the magistrate judge's imposition of filing restrictions.  *See id.* at 9-10.  The Court finds that the objection, however, mischaracterizes the magistrate judge's ruling, and that, in any event, the magistrate judge's ruling was neither clearly erroneous nor contrary to law.

12

exempt defendants, absent a court order, from the obligation to respond to Ms. Ford's motions. *Id.* at 4. The amended rules also contained a new requirement, stating that, "[i]n order to address the excessive number of filings by Intervenor Plaintiff, she shall be permitted to file no more than one pleading every fourteen days (starting on June 25, 2025)." *Id.* at 5. A review of the docket shows that Ms. Ford has substantially complied with the magistrate judge's June 25, 2025 order. The Court finds that Judge O'Hara's orders, combined with Ms. Ford's compliance with these orders, provides the defendants with essentially all of the relief that they sought through their motion for filing restrictions. As such, the Court finds that the present circumstances of the case do not merit further filing restrictions. The Court will therefore deny the motion for filing restrictions.

Nevertheless, the Court warns Ms. Ford that continuing to file frivolous motions can result in the imposition of filing restrictions. Specifically, filing restrictions may be appropriate if Ms. Ford files future unsupported motions alleging that government agencies, attorneys for defendants, and others are stalking and otherwise disturbing her, as Ms. Ford's filings to this effect have expended significant court resources. *In re Sindram*, 498 U.S. 177, 179–80 (1991) ("The goal of fairly dispensing justice, however, is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests.").

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's motion at Docket No. 422, insofar as it requests the Court to substitute Docket No. 423 for Docket No. 420, is **GRANTED**. It is further

**ORDERED** that the motion at Docket No. 420 is **WITHDRAWN**. It is further

13

**ORDERED** that plaintiff's motion for clarification on the Court's order denying the motions for a temporary restraining order, Docket No. 423, is **DENIED**.  It is further

**ORDERED** that plaintiff's motions for temporary restraining orders, Docket Nos. 446, 447, 448, are **DENIED**.  It is further

**ORDERED** that plaintiff's motion at Docket No. 434, insofar as it requests the Court to substitute Docket No. 434-1 for Docket No. 433, is **GRANTED**.  It is further

**ORDERED** that the motion at Docket No. 433 is **WITHDRAWN**.  It is further

**ORDERED** that plaintiff's motion for reconsideration, Docket No. 434-1, is **DENIED**.  It is further

**ORDERED** that plaintiff's motion for clarification of the Court's order denying the motions for summary judgment, Docket No. 415, is **DENIED as moot**.  It is further

**ORDERED** that plaintiff's motion to correct the docket sheet, Docket No. 421, is **GRANTED in part and DENIED in part**.  It is further

**ORDERED** that the clerk of the court shall update the docket sheet to reflect that plaintiff's brief, Docket No. 416, is in opposition to, rather than in support of, Docket No. 403.  It is further

**ORDERED** that defendants' motion to impose filing restrictions, Docket No. 403, is **DENIED**.  It is further

**ORDERED** that plaintiff's motion to file an oversized brief in response to defendants' motion to strike, Docket No. 605, is **GRANTED**.  It is further

**ORDERED** that defendants' motion to strike, Docket No. 592, is **GRANTED**.

DATED August 13, 2025.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge

15